Citation Nr: 1406907 
Decision Date: 02/19/14 Archive Date: 03/04/14

DOCKET NO. 06-31 664 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Cleveland, Ohio


THE ISSUES

1. Entitlement to service connection for residuals of sunstroke. 

2. Entitlement to service connection for a skin disease (claimed as jungle rot).

3. Entitlement to service connection for a bilateral eye disability.

4. Entitlement to service connection for bilateral hearing loss.

5. Entitlement to service connection for a left knee disability.


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States




ATTORNEY FOR THE BOARD

B. Elwood, Associate Counsel


INTRODUCTION

The Veteran had active service from December 1963 to December 1965, which includes service in the Republic of Vietnam. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a March 2006 rating decision of the Department of Veterans Affairs (VA), Regional Office (RO), in Cleveland, Ohio. In that decision, the RO denied entitlement to service connection for sunstroke, jungle rot, a bilateral eye disability, bilateral hearing loss, and a left knee disability.

In a September 2006 Appeal To Board Of Veterans' Appeals (VA Form 9), the Veteran requested a hearing before a Decision Review Officer (DRO) at the RO. An informal hearing conference with a DRO was conducted in August 2008 in lieu of a formal hearing, and a report of that conference has been associated with the Veteran's claims file.

The Veteran also requested a Board hearing before a Veterans Law Judge at the RO (Travel Board hearing). He was notified by way of an April 2013 letter that his Board hearing had been scheduled for a date in August 2013. This letter was sent to his address of record and was not returned as undeliverable. A copy of this letter was also sent to his representative. The Veteran failed to appear for the scheduled Board hearing. To the Board's knowledge, he has offered no explanation as to why he failed to appear for the scheduled hearing. Accordingly, the Board will proceed to a decision on this appeal as if the Veteran's hearing request had been withdrawn. See 38 C.F.R. § 20.704(d) (2013).

The Veteran had also perfected an appeal with regard to the issue of entitlement to service connection for a psychiatric disability. In October 2009, the RO granted service connection for posttraumatic stress disorder with major depressive disorder and panic disorder, and thereby resolved the appeal as to that issue.

In addition to the paper claims file, there are Virtual VA and Veteran's Benefits Management System (VBMS) paperless claims files associated with the Veteran's claims. The documents in these files have been reviewed and considered as part of this appeal.

In a December 2009 Statement In Support Of Claim (VA Form 21-4138), the Veteran's representative raised the issue of entitlement to compensation benefits for a child born with spina bifida. This issue has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over it, and it is referred to the AOJ for appropriate action. 

The issues of entitlement to service connection for a bilateral eye disability, bilateral hearing loss, and a left knee disability are addressed in the REMAND portion of the decision below and are REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDINGS OF FACT

1. The Veteran does not have current sunstroke or any residual of sunstroke. 

2. The Veteran's current skin disease did not have its clinical onset in service and is not otherwise related to active service.


CONCLUSIONS OF LAW

1. The Veteran does not have sunstroke or any residual of sunstroke that is the result of a disease or injury incurred in or aggravated by active military service. 38 U.S.C.A. §§ 1110, 1131, 5107(b) (West 2002); 38 C.F.R. § 3.303 (2013).

2. The Veteran's current skin disease was not incurred or aggravated in service. 38 U.S.C.A. §§ 1110, 1113(b), 1116, 1131, 1154(b), 5107(b) (West 2002); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2002 & Supp. 2013) redefined VA's duty to assist the Veteran in the development of a claim. VA regulations for the implementation of the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2013).

Under the VCAA, VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; (3) that the claimant is expected to provide; and (4) must request that the claimant provide any evidence in his possession that pertains to the claim. Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004); see 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b).

The United States Court of Appeals for Veterans Claims (Court) has also held that the VCAA notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include: 1) Veteran status; 2) existence of a disability; 3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

In a pre-adjudication letter dated in May 2005, the RO notified the Veteran of the evidence needed to substantiate his claims of service connection for residuals of sunstroke and a skin disease. This letter also satisfied the second and third elements of the duty to notify by delineating the evidence VA would assist him in obtaining and the evidence it was expected that he would provide. Quartuccio v. Principi, 16 Vet. App. 183, 186-87 (2002); Charles v. Principi, 16 Vet. App. 370 (2002).

The claimant's Veteran status has been substantiated. He was notified of all other elements of the Dingess notice, including the disability rating and effective date elements of his claims, in a March 2006 letter. 

The VCAA also requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate his claim. 38 U.S.C.A. § 5103A; 38 C.F.R. 
§ 3.159(c), (d). This "duty to assist" contemplates that VA will help a claimant obtain records relevant to his claim, whether or not the records are in Federal custody, and that VA will provide a medical examination or obtain an opinion when necessary to make a decision on the claim. 38 C.F.R. § 3.159(c)(4). 

VA obtained the Veteran's service treatment records, pertinent service personnel records, Social Security Administration disability records, and all of the identified relevant post-service VA treatment records and private medical records. 

VA is obliged to provide an examination or obtain a medical opinion in a claim for service connection when the record contains competent evidence that the claimant has a current disability or signs and symptoms of a current disability, the record indicates that the disability or signs and symptoms of disability may be associated with active service, and the record does not contain sufficient information to make a decision on the claim. 38 U.S.C.A. § 5103A(d); McLendon v. Nicholson, 20 Vet. App. 79 (2006). The threshold for finding a link between current disability and service is low. Locklear v. Nicholson, 20 Vet. App. 410 (2006); McLendon, 20 Vet. App. at 83. The Veteran's reports of a continuity of symptomatology can satisfy the requirement for evidence that the claimed disability may be related to service. McLendon, 20 Vet. App. at 83.

The types of evidence that "indicate" that a current disability "may be associated" with military service include, but are not limited to, medical evidence that suggests a nexus but is too equivocal or lacking in specificity to support a decision on the merits, or credible evidence of continuity of symptomatology such as pain or other symptoms capable of lay observation. McLendon, 20 Vet. App. at 83. There must, however, be sufficient evidence of such a relationship to trigger VA's duty to provide an examination or obtain a medical opinion. Waters v. Shinseki, 601 F.3d 1274 (Fed. Cir. 2010).

The Veteran was not afforded VA examinations for his claimed residuals of sunstroke and skin disease and opinions as to the etiology of these claimed disabilities have not otherwise been obtained. As discussed below, there is no evidence that Veteran has been diagnosed as having any current sunstroke or residual of sunstroke at any time during the claim period and there is no evidence of any current sign or symptom of sunstroke/residual of sunstroke that may be related to any disease or injury in service. Also, there is no competent evidence that his current skin disease may be related to a disease or injury in service. The Veteran has not reported, and the evidence does not reflect, a continuity of symptomatology with respect to his claimed skin disease. Also, there is no medical evidence that any skin disease may be related to service and the Veteran has not alluded to the existence of any such evidence. Hence, VA examinations or opinions for the claimed residuals of sunstroke and skin disease are not necessary. See McLendon, 20 Vet. App. at 83.

Analysis

Service connection will be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303.

Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996) (table); see also Hickson v. West, 12 Vet. App. 247, 253 (1999); 38 C.F.R. § 3.303.

In relevant part, 38 U.S.C.A. § 1154(a) (West 2002) requires that VA give "due consideration" to "all pertinent medical and lay evidence" in evaluating a claim for disability or death benefits. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009).

The United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that "[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional." Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006) ("[T]he Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence").

Once evidence is determined to be competent, the Board must determine whether such evidence is also credible. See Layno v. Brown, 6 Vet. App. 465, 469 (1994) (distinguishing between competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted")).

Service connection may also be granted for a disease first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

A Veteran, who, during active military service, served in Vietnam during the period beginning in January 1962 and ending in May 1975, is presumed to have been exposed to herbicides. 38 C.F.R. §§ 3.307, 3.309.

If a Veteran was exposed to an herbicide agent during active military, naval, or air service, the following diseases shall be service-connected even though there is no record of such disease during service: chloracne or other acneform disease consistent with chloracne, Type 2 diabetes, Hodgkin's disease, ischemic heart disease (including, but not limited to, acute, subacute, and old myocardial infarction; atherosclerotic cardiovascular disease including coronary artery disease (including coronary spasm) and coronary bypass surgery; and stable, unstable and Prinzmetal's angina), all chronic B-cell leukemias (including, but not limited to, hairy-cell leukemia and chronic lymphocytic leukemia), multiple myeloma, non-Hodgkin's lymphoma, Parkinson's disease, acute and subacute peripheral neuropathy, porphyria cutanea tarda, prostate cancer, respiratory cancers (cancer of the lung, bronchus, larynx or trachea), and soft-tissue sarcoma (other than osteosarcoma, chondrosarcoma, Kaposi's sarcoma, or mesothelioma). 38 C.F.R. § 3.309(e).

Notwithstanding the foregoing presumption, a claimant is not precluded from establishing service connection with proof of direct causation. 38 U.S.C.A. § 1113(b); Combee v. Brown, 34 F.3d 1039, 1042 (Fed. Cir. 1994).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

Residuals of Sunstroke

In the absence of proof of present disability there can be no successful claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). See also Degmetich v. Brown, 104 F.3d 1328 (1997) (also interpreting 38 U.S.C. § 1131 as requiring the existence of a present disability for VA compensation purposes).

To be present as a current disability, there must be evidence of the condition at some time during the claim period. Gilpin v. West, 155 F. 3d 1353, 1356 (Fed. Cir. 1998); see also McClain v. Nicholson, 21 Vet. App. 319, 321 (2007) (the Gilpin requirement that there be a current disability is satisfied when the disability is shown at the time of the claim or during the pendency of the claim, even though the disability subsequently resolves).

In this case, the Veteran contends that he was treated for sunstroke in service while serving at Fort Benning, Georgia before his deployment to Vietnam. During an April 2006 VA mental health evaluation and in a June 2010 VA Form 9, he reported that he experienced "difficulty when the weather [was] hot" and that he was unable to "stay out in hot weather." He is competent to make such statements, there is nothing to explicitly contradict his reports, and they are not inconsistent with the evidence of record. Nevertheless, as explained below, the evidence dated since his claim was received in April 2005 reflects that he does not have any current sunstroke or residual of sunstroke. 

Although a diagnosis is not always necessary to establish service connection, no current sunstroke or any disability attributable to sunstroke has been identified at any time during the claim period. Also, the Veteran has not reported, and the evidence does not otherwise indicate, any specific post-service treatment for sunstroke or a residual of sunstroke. In sum, there is no other evidence of any sunstroke or residual of sunstroke at any time since the Veteran's claim was received in April 2005, and neither the Veteran nor his representative have alluded to the existence of any such evidence. Thus, in light of the lack of evidence of a diagnosed disability, the weight of the evidence is against a finding of current sunstroke or a current residual of sunstroke and the existence of a current disability is the cornerstone of a claim for VA disability compensation. 

For the foregoing reasons, the preponderance of the evidence is against the Veteran's claim. The benefit-of-the-doubt doctrine is therefore not for application in this case and the claim of service connection for residuals of sunstroke must be denied. See 38 U.S.C.A. § 5107(b); see also Gilbert v. Derwinski, 1 Vet. App. at 55-57.

Skin Disease

A June 2012 VA medical resident inpatient note included among the Veteran's paperless records in the Virtual VA system reveals that he has been diagnosed as having "right sided foot cellulitis." Thus, a current skin disease has been demonstrated.
As the Veteran served in Vietnam, he is presumed to have been exposed to herbicides, including Agent Orange. 38 U.S.C.A. § 1116; 38 C.F.R. § 3.307. However, his current skin disease is not a condition listed in 38 C.F.R. § 3.309(e). Presumptive service connection on the basis of his presumed exposure to herbicides is, therefore, not warranted. 38 C.F.R. § 3.309(e); see also 68 Fed. Reg. 27,630-41 (May 20, 2003) (stating that the Secretary of VA has determined that there is no positive association between exposure to herbicides and any other condition for which the Secretary has not specifically determined that a presumption of service connection is warranted).

In his April 2005 claim, the Veteran reported that his current skin disease (claimed as jungle rot of the feet/heels) had its onset in service in 1965. Service personnel records indicate that he served in Vietnam from August to December 1965. Also, the evidence of records reflects that he engaged in combat while in Vietnam. Where a Veteran engaged in combat, satisfactory lay evidence that an injury or disease was incurred in service will be accepted as sufficient proof of service connection where such evidence is consistent with the circumstances, conditions, or hardships, of service. 38 U.S.C.A. § 1154(b). 

Section 1154(b) sets forth a three step sequential analysis that must be undertaken when a combat Veteran seeks benefits under the method of proof provided by the statute. First, it must be determined whether the Veteran has proffered "satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease." Second, it must be determined whether the proffered evidence is "consistent with the circumstances, conditions, or hardships of such service." Finally, if the first two requirements are met, VA shall accept the Veteran's evidence as "sufficient proof of service connection," even if no official record of such incurrence exists. In such a case, a factual presumption arises that the alleged injury or disease is service-connected. Collette v. Brown, 82 F.3d 389, 393 (Fed. Cir. 1996); 38 C.F.R. § 3.304.

The Veteran is competent to report symptoms of a skin disease in service during combat situations. Such reports are satisfactory evidence, and his reports are consistent with the circumstances of his service in Vietnam. There is no clear and convincing evidence to the contrary. Hence the presence of in-service symptoms of a skin disease is conceded. 

Nevertheless, the presumptions of 38 U.S.C.A. § 1154(b) do not extend to the nexus element of a claim of service connection. Wade v. West, 11 Vet. App. 302 (1998); Turpen v. Gober, 10 Vet. App. 536 (1997).

The Veteran has not reported, and the evidence does not otherwise indicate, a continuity of symptomatology with regard to his skin disease. There is no evidence of any complaints of or treatment for skin problems in his service treatment records and his December 1965 separation examination was normal. Also, he reported on a December 1965 report of medical history form completed for purposes of separation from service that he was neither experiencing, nor had he ever experienced, any skin diseases.

The objective evidence otherwise indicates that the Veteran's current skin disease did not manifest until many years after service. The earliest post-service clinical evidence of a possible skin disease is an October 2000 VA medication list which appears to indicate that the Veteran was prescribed a skin cream (i.e. Clotrimazole 1% topical cream) possibly as early as June 2000. Also, a May 2006 VA agent orange/ionizing radiation note includes a report of a 10 year history of a recurrent patchy circular rash on the Veteran's back. A diagnosis of tinea versicolor by history was provided. 

There is no lay or clinical evidence of any earlier skin problems following service. The absence of any clinical evidence of skin problems for decades after the Veteran's separation from service in December 1965 weighs against a finding that his current skin disease was present in service or in the year or years immediately after service.

The Veteran has expressed his belief that his current skin disease had its onset in service. However, as a lay person, he can only comment as to symptoms and immediately-observable relationships. He lacks the expertise in this case, not involving such an immediately observable cause-and-effect relationship, to conclude that his current skin disease is related to any specific skin problems in service, as opposed to some other cause. Rather, it would require medical expertise to evaluate the disease, consider all the potential causes, and determine that one was a more likely cause than another. Hence, the Veteran's opinion on this question is not competent evidence. 38 C.F.R. § 3.159(a)(1), (2) (2013).

There is no other evidence of a relationship between the Veteran's current skin disease and service, and neither he nor his representative has alluded to the existence of any such evidence. Thus, the preponderance of the evidence is against a finding that the Veteran's current skin disease manifested in service or is otherwise related to service. Hence, the claim of service connection for a skin disease must be denied. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. 


ORDER

Service connection for residuals of sunstroke is denied.

Service connection for a skin disease is denied.


REMAND

VA is obliged to provide an examination or obtain a medical opinion in a claim for service connection when the record contains competent evidence that the claimant has a current disability or signs and symptoms of a current disability, the record indicates that the disability or signs and symptoms of disability may be associated with active service, and the record does not contain sufficient information to make a decision on the claim. 38 U.S.C.A. § 5103A(d); McLendon, 20 Vet. App. at 79. The threshold for finding a link between current disability and service is low. Locklear, 20 Vet. App. at 410; McLendon, 20 Vet. App. at 83. The Veteran's reports of a continuity of symptomatology can satisfy the requirement for evidence that the claimed disability may be related to service. McLendon, 20 Vet. App. at 83.

A January 2012 VA optometry note included among the Veteran's paperless records in the Virtual VA system includes a diagnosis of, among other things, bilateral reticular degeneration. Thus, there is competent evidence of a current bilateral eye disability. The Veteran contends that a bamboo stick became stuck in his eye while serving in Vietnam and that he has continued to experience eye problems in the years since that time. Hence, there is competent evidence of a current bilateral eye disability and of a continuity of symptomatology in the years since service, suggesting that a current eye disability may be related to service. Thus, VA's duty to obtain an examination as to the nature and etiology of the Veteran's current bilateral eye disability, is triggered. Such an examination is needed to obtain a medical opinion as to the nature and etiology of any current eye disability.

With respect to the claim of service connection for bilateral hearing loss, the Veteran was afforded a VA audiologic examination in March 2006 and was diagnosed as having bilateral sensorineural hearing loss as defined by VA. See 38 C.F.R. § 3.385 (2013). The examiner who conducted the examination opined that the Veteran's current hearing loss was not likely ("not at least as likely as not") caused by military noise exposure. This opinion was based on the fact that although the Veteran's hearing was normal bilaterally at the time of his November 1963 entrance examination and he reported unprotected military noise exposure associated with military weaponry and helicopters, an audiogram conducted during his December 1965 separation examination revealed that his hearing was normal bilaterally.

The March 2006 opinion is insufficient because it is entirely based on a lack of objective clinical evidence of hearing loss in the Veteran's service treatment records. However, he reported in a September 2012 statement (VA Form 21-4138) that he noticed a decrease in his hearing while in service after being exposed to combat-related noises without the use of hearing protection. In this regard, the Veteran reported a history of unspecified "ear, nose or throat trouble" on a December 1965 report of medical history completed for purposes of separation from service. The March 2006 opinion does not reflect consideration of this information provided by the Veteran. A medical opinion based solely on the absence of documentation in the record is inadequate and a medical opinion is inadequate if it does not take into account the Veteran's reports of symptoms and history (even if recorded in the course of the examination). Dalton v. Peake, 21 Vet. App. 23 (2007).

VA regulations provide that where an examination report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes. 38 C.F.R. § 4.2 (2013); see 38 C.F.R. § 19.9 (2013). Where the Board makes a decision based on an examination report which does not contain sufficient detail, remand is required "for compliance with the duty to assist by conducting a thorough and contemporaneous medical examination." Goss v. Brown, 9 Vet. App. 109, 114 (1996); Stanton v. Brown, 5 Vet. App. 563, 569.

Moreover, the VCAA requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate his claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c), (d). The VCAA's duty to assist includes a duty to help a claimant obtain records relevant to his claim, whether or not the records are in Federal custody. 38 C.F.R. § 3.159(c)(4).

The Veteran reported on his April 2005 claim that he received treatment for his asserted eye disability and left knee disability from Sam's Club Eye Center (Sam's Club) in South Point, Ohio and Dr. Lombardi with New Albany Hospital in New Albany, Ohio. There are no treatment records from Sam's Club in the claims file or among the Veteran's paperless records in the Virtual VA and VBMS systems. Also, although he has submitted some treatment records from Dr. Lombardi/Joint Implant Surgeons, Inc. and New Albany Surgical Hospital, these records indicate that there are likely additional relevant records that have not been obtained.

When VA becomes aware of private treatment records it will specifically notify the Veteran of the records and ask for a release to obtain the records. If the Veteran does not provide the release, VA should ask the Veteran to obtain the records. 38 C.F.R. § 3.159(e)(2). These steps have not been taken with regard to any relevant treatment records from the above identified private treatment providers. Thus, a remand is also necessary to attempt to obtain any additional relevant private treatment records.

Accordingly, the case is REMANDED for the following action:

1. The RO/AMC shall ask the Veteran to complete authorizations for VA to obtain all records of his treatment for an eye disability, hearing loss, and a left knee disability from Sam's Club Eye Center, Dr. Lombardi/Joint Implant Surgeons, Inc., and New Albany Surgical Hospital. All efforts to obtain these records must be documented in the claims file.

If the Veteran fails to furnish any necessary releases for private treatment records, he shall be asked to obtain the records and submit them to VA.

If any putative records are unavailable, the Veteran shall be notified of the identity of the records that are unavailable, the efforts VA has undertaken to obtain such records, and any additional action that may be taken concerning his claims. All such notification must be documented in the claims file.

2. After all efforts have been exhausted to obtain and associate with the claims file any additional treatment records, the RO/AMC shall schedule the Veteran for a VA eye examination to determine the nature and etiology of any current eye disability. All indicated tests and studies shall be conducted. 

The claims file, including this remand and any relevant records contained in the Virtual VA and VBMS systems, along with any records obtained pursuant to this remand, must be sent to the examiner for review.

For each current eye disability identified (i.e. any eye disability diagnosed since April 2005), the examiner shall answer all of the following questions:

(a) Is it at least as likely as not that the current eye disability had its onset in service, is related to the Veteran's reported eye injury in service when a piece of bamboo became stuck in his eye, or is otherwise the result of a disease or injury in service?

(b) Which diagnosed eye conditions, if any, are refractive errors as opposed to acquired eye disabilities?

In formulating the above opinions, the examiner must acknowledge and comment on all eye disabilities diagnosed since April 2005, the Veteran's report of an eye injury in service when a piece of bamboo became stuck in his eye, and his report of a continuity of eye symptomatology in the years since that time. For purposes of the above opinions, the examiner shall presume that the Veteran's report of an eye injury in service when a piece of bamboo became stuck in his eye is accurate.

The examiner is advised that the Veteran is competent to report an eye injury in service, his symptoms, and history, and such statements by the Veteran must be specifically acknowledged and considered in formulating any opinions. If the examiner rejects the Veteran's reports regarding symptoms or continuity since service, the examiner must provide a reason for doing so. The absence of evidence of treatment for eye problems in the Veteran's service treatment records cannot, standing alone, serve as the basis for a negative opinion.

If the examiner determines that he or she cannot provide an opinion without resorting to speculation, the examiner should explain the inability to provide an opinion, identifying precisely what facts could not be determined. In particular, he or she should comment on whether an opinion could not be provided because the limits of medical knowledge have been exhausted or whether additional testing or information could be obtained that would lead to a conclusive opinion. (The agency of original jurisdiction shall ensure that any additional evidentiary development suggested by the examiner be undertaken so that a definite opinion can be obtained.)

The examiner must provide a complete rationale for each opinion given. 

3. After all efforts have been exhausted to obtain and associate with the claims file any additional treatment records, the RO/AMC shall schedule the Veteran for a VA audiologic examination to determine the etiology of his current hearing loss. All indicated tests and studies shall be conducted. 

The claims file, including this remand and any relevant records contained in the Virtual VA and VBMS systems, along with any records obtained pursuant to this remand, must be sent to the examiner for review.

The examiner shall answer the following question:

Is it at least as likely as not that the Veteran's current hearing loss had its onset in service, had its onset in the year immediately following service (in the case of any current sensorineural hearing loss), is related to his conceded exposure to loud noises in service, is related to his reported decreased hearing in service, or is otherwise the result of a disease or injury in service?

Regarding the basis for the opinion, the examiner must comment on the likelihood that the multiple incidents of loud noise experienced during service resulted in damage to auditory hair cells, even though findings may or may not suggest a recovered temporary threshold shift during service. If the examiner finds auditory hair cell damage to be a likely result of the in-service noise exposure, then the examiner shall comment on the likelihood that such damaged auditory hair cells would result in a greater permanent hearing loss than otherwise would be manifest. 

In formulating the above opinions, the examiner must acknowledge and comment on the Veteran's reports of noise exposure and decreased hearing in service and his report of "ear, nose, or throat trouble" on the December 1965 report of medical history completed for purposes of separation from service. For purposes of the above opinions, the examiner shall presume that the Veteran's reports of noise exposure and decreased hearing in service are accurate.

The examiner is advised that the Veteran is competent to report noise exposure and decreased hearing in service, his symptoms, and history, and such statements by the Veteran must be specifically acknowledged and considered in formulating any opinions. If the examiner rejects the Veteran's reports regarding symptoms, the examiner must provide a reason for doing so. The absence of evidence of treatment for hearing loss in the Veteran's service treatment records cannot, standing alone, serve as the basis for a negative opinion.

If the examiner determines that he or she cannot provide an opinion without resorting to speculation, the examiner should explain the inability to provide an opinion, identifying precisely what facts could not be determined. In particular, he or she should comment on whether an opinion could not be provided because the limits of medical knowledge have been exhausted or whether additional testing or information could be obtained that would lead to a conclusive opinion. (The agency of original jurisdiction shall ensure that any additional evidentiary development suggested by the examiner be undertaken so that a definite opinion can be obtained.)

The examiner must provide a complete rationale for each opinion given. 

4. The RO/AMC will then review the Veteran's claims file and ensure that the foregoing development actions have been conducted and completed in full, and that no other notification or development action, in addition to those directed above, is required. If further action is required, it should be undertaken prior to further claims adjudication.

5. The RO/AMC will then readjudicate the Veteran's claims. If the benefits sought on appeal remain denied, the Veteran and his representative should be provided with a Supplemental Statement of the Case. An appropriate period of time should be allowed for response.

Thereafter, if appropriate, the case is to be returned to the Board, following applicable appellate procedure. The Veteran need take no action until he is so informed. He has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). The purposes of this remand are to obtain additional information and comply with all due process considerations. No inference should be drawn regarding the final disposition of this claim as a result of this action.

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2013).




______________________________________________
DEMETRIOS G. ORFANOUDIS
Acting Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs