# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-743

Hal H. Locklear, Appellant,

v.

R. James Nicholson,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Decided    September 19, 2006    )

*David E. Boelzner*, of Washington, D.C., was on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Richard Mayerick*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before HAGEL, LANCE, and SCHOELEN, *Judges*.

HAGEL, *Judge*: Hal H. Locklear appeals through counsel an April 12, 2004, Board of Veterans' Appeals (Board) decision wherein the Board denied service connection for a chest disability. The Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a) to review that Board decision. For the reasons provided in this opinion, the Court will vacate the April 2004 Board decision and remand the matter for readjudication consistent with this opinion.

## I. BACKGROUND

Mr. Locklear served on active duty in the U.S. Army from October 1970 to May 1971. Record (R.) at 17. In May 2001, he submitted an application for compensation for severe chest pains caused by "overexposure to CS gas."[1] R. 58. The following month, in order to comply with its duty

---

[1] CS (Ortho-chlorobenzalmalononitrile) gas is more commonly known as "tear gas."

to notify under the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096, a VA regional office sent him a letter. R. at 153-57. The contents of that letter will be discussed in detail later in this opinion.

In September 2001, the regional office denied service connection for chest pains. Mr. Locklear appealed that decision to the Board, resulting in the April 2004 Board decision, which is the subject of this appeal.

On appeal, Mr. Locklear raises four arguments. First, he asserts that the Board failed to consider all evidence and potential issues. He contends tersely that the Board "should have considered at least a claim for service connection for reflux disease" because such a claim was presented by the evidence before the Board. Appellant's Brief (Br.) at 5. Next, he contends that the Board failed to offer adequate reasons or bases for rejecting his account of pain. *Id*. at 5-7. His third argument is that VA did not provide adequate notice pursuant to 38 U.S.C. § 5103(a). *Id.* at 7-12. The main thrust of that argument appears to be that VA was required to notify him of "defects it perceive[d] . . . in the evidence" and of "what gaps there [we]re in the existing evidence." *Id.* at 10. According to Mr. Locklear, it is inequitable to expect a lay person to deduce, from a letter like the one he was sent, that the evidence in VA's possession suffers from particular defects. *Id.* Finally, he contends that VA breached its duty to assist by not providing him with a VA medical examination. *Id.* at 12.

In response to Mr. Locklear's first argument, the Secretary asserts that the Board "did deny this component of the claim." Secretary's Br. at 9. Responding to Mr. Locklear's second argument, he contends that whether or not Mr. Locklear has pain, "[t]he absence of a nexus was fatal to th[e] claim." *Id*. With respect to the duty to notify, the Secretary argues that neither the statute nor the regulation "mandates a 'preadjudication' of a claim." *Id.* at 7. Finally, the Secretary asserts that no VA examination was required in this case because the record contains much evidence that Mr. Locklear's condition is not related to service. *Id.* at 8.

We will begin our analysis with a discussion of Mr. Locklear's argument regarding the duty to notify, the basis of Mr. Locklear's third argument. We will then address his first, second, and fourth arguments in that order.

## II. ANALYSIS

### A. Compliance with the Duty to Notify

#### 1. Standard of Review

Whether a notice letter satisfies "the statutory and regulatory notification requirements [is] a substantially factual determination of the type that should [be] made by the agency in the first instance." *Mayfield v. Nicholson*, 444 F.3d. 1328, 1335 (Fed. Cir. 2006). It follows that Board findings regarding VA's compliance with the duty to notify are findings of fact that the Court reviews under the clearly erroneous standard. *See* 38 U.S.C. § 7261(a)(4). A factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

#### 2. Review of the Board's Findings Regarding the Duty to Notify

Here, the Board outlined the requirements of the duty to notify and then concluded that, "[i]n a letter dated in June 2001, VA notified the veteran of the evidence needed to substantiate the claim and offered to assist him in obtaining any relevant evidence." R. at 3. Next, the Board concluded that "[t]he letter gave notice of what evidence the veteran needed to submit and what evidence VA would try to obtain and notified the veteran of the evidence that the [regional office] had obtained and considered." *Id.* For the reasons stated below, upon review of the June 2001 letter and the Board's findings with respect to it, we cannot conclude that the Board erred in finding that that letter satisfied VA's duty to notify.

The Veterans Claims Assistance Act of 2000, enacted on November 9, 2000, was designed by Congress in order to overcome a string of cases, culminating in *Morton v. West*, 12 Vet.App. 477, 486 (1999), that ultimately impaired VA's ability to provide claimants with assistance in obtaining information and evidence in connection with their claims for benefits. *See* 146 CONG. REC. H6788 (daily ed. July 25, 2000) (statement of Rep. Evans) ("This legislation is needed to correct erroneous interpretations of the law."). The primary purpose behind the Veterans Claims Assistance Act of 2000 was to ensure that all information necessary to making a determination on a claim is obtained by or presented to VA early on in the decisionmaking process–that is, prior to the initial adjudication of the claim. *See id.* (noting that the Court's decision in *Morton* "meant that benefits claims that were

3

filed by disabled veterans ha[d] been rejected prior to their proper development and consideration"). A key provision of that act is the duty to notify, now codified at 38 U.S.C. § 5103(a).

The duty to notify was designed by Congress with one purpose in mind–to facilitate and maximize the collaborative process that is the cornerstone of the VA claims process. To achieve its purpose, Congress imposed upon VA three very specific statutory notice requirements, which the Court has labeled "notice elements."[2] *Pelegrini v. Principi*, 18 Vet.App. 112, 118 (2004). The first statutory notice element requires that VA "notify the claimant and the claimant's representative, if any, of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim." 38 U.S.C. § 5103(a). The second and third statutory notice elements require that VA "indicate which portion of that information and evidence, if any, is to be provided by the claimant and which portion, if any, the Secretary, in accordance with section 5103A of this title . . . and any other applicable provisions of law, will attempt to obtain on behalf of the claimant." *Id.* It is of the utmost importance to realize that the duty to notify is geared entirely toward "information and evidence" as opposed to legal requirements or some other formulaic abstraction. Thus, a letter in which VA merely sets forth the legal requirements for obtaining an award of service connection would be insufficient to satisfy the clear terms of section 5103(a).

In this case, based on the arguments presented to us by Mr. Locklear, we cannot find that the Board erred in concluding that the June 2001 letter satisfied section 5103(a). However, by this finding, we do not mean to suggest that that letter is free from imperfection. Nevertheless, because Mr. Locklear has not asserted any notice errors other than the one described below, *see infra* at 6, we will limit our analysis to the argument actually raised to us.

Regarding the first notice element, the letter apprised Mr. Locklear not only of the legal requirements for obtaining an award of service connection, but, more importantly, of some of the kinds of information and evidence necessary to satisfy those requirements. *See* R. at 153-54. Regarding the second and third notice elements, the letter is particularly well crafted, providing Mr. Locklear with a detailed chart listing all of the evidence that VA had received, from whom it had

---

[2] Although that statute's implementing regulation, 38 C.F.R. § 3.159(b)(1) (2005), imposes a so-called fourth notice element that requires VA to "request that the claimant provide any evidence in the claimant's possession that pertains to the claim," we will not address that element because it has not been raised in any manner by Mr. Locklear.

received that evidence, and the period of time to which that evidence pertained.  *See* R. at 154-55.
That chart has been reproduced below in its entirety.

### What We Already Have Received

We have already received the following evidence in support of your claim:

| EVIDENCE | RECEIVED FROM | FOR PERIOD (dates) |
|---|---|---|
| Medical treatment records | VA Medical Center, Fayetteville, North Carolina | October 8, 1999 through April 9, 2001 |
| Statement | You | Dated May 4, 2001 and date unknown |
| Lay statement | Doris Locklear | Date unknown |
| Medical statement | Dr. Lowry | Dated April 9, 2001 |
| Medical treatment records | First Health Family Care Center | August 4, 1999 through April 3, 2001 |
| Medical treatment records | S.E. Regional Medical Center | May 23, 1993 through April 21, 2001 |
| Medical treatment records | Duke University Medical Center | Dated December 3, 1986 |
| Medical treatment records | S.E. Medical Practice | August 4, 1998 through January 24, 2000 |
| Medical treatment records | St. Eugene Community Hospital | November 5, 1986 through October 19, 2000 |
| Medical treatment records | Medical Specialists | March 31, 1994 through March 19, 2001 |

R. at 154-55.  This method of identifying for the claimant evidence already in the possession of VA
eliminates confusion on the part of the claimant regarding whether VA has particular evidence and

thereby aids in eliminating the submission of or requests for information already under consideration by VA.

Under a heading entitled "What We Are Doing," in the letter VA then informed Mr. Locklear that VA was in the process of seeking service medical records from the Army. R. at 155. Finally, under a heading entitled "What VA Needs From You," Mr. Locklear was told in great detail of the specific types of evidence that VA wanted him to submit. R. at 155-56. The letter also clearly informed Mr. Locklear that, although VA would assist him in obtaining certain records, the ultimate responsibility for obtaining them rested with him.

Mr. Locklear's argument with respect to the duty to notify amounts to a contention that the statute requires VA to analyze the evidence already in its possession and inform the claimant that the evidence is insufficient to support an award and that other evidence is required in order for the claimant to prevail. In other words, he argues that, as part of its duty to notify, VA is required to provide him with a predecisional adjudication.[3] That argument must fail.

To begin with, the duty to notify deals with evidence gathering, not the analysis of already gathered evidence. *See Dingess v. Nicholson*, 19 Vet.App. 473, 490 (2006) ("Within the VA adjudicatory scheme, section 5103(a) is focused on notice that is required to be provided to a claimant upon receipt of a complete or substantially complete application for benefits and prior to an initial adjudication."). In addition, section 5103(a) commands that the statutory notice obligations be complied with "[u]pon receipt of a complete or substantially complete application" for VA benefits. 38 U.S.C. § 5103(a). By its very terms, the statute contemplates prompt notice, not belated predecisional adjudication. In addition, the statute does not impose upon VA an obligation to provide notice "upon receipt of every piece of evidence or information." If that were the case, then VA's notice obligations could continue in perpetuity, and VA could never decide a claim until a claimant has submitted evidence sufficient to warrant an award. In that regard, it is vital that "section 5103(a) notice. . . be considered within its place in the VA adjudication scheme." *Dingess*, 19 Vet.App. at 489. Because the VA adjudication scheme is longitudinal and sequential–the gathering of information and evidence precedes VA analysis and adjudication–and section 5103(a)

---

[3] Whether section 5103(a) requires predecisional analysis of evidence by VA is a question of law that we will review de novo. 38 U.S.C. § 7261(a)(1); *see Smith v. Gober*, 14 Vet. App. 227, 230 (2000).

deals only with information and evidence gathering prior to the initial adjudication of a claim, it would be senseless to construe that statute as imposing upon the Secretary a legal obligation to rule on the probative value of information and evidence presented in connection with a claim prior to rendering a decision on the merits of the claim itself. We will not divorce the duty to notify from its rightful place within the VA adjudication scheme.

Finally, it is important to realize, as the Court pointed out in *Dingess*, and as the Secretary argues in his brief, that the approach advocated by Mr. Locklear was considered and rejected by the Secretary prior to the promulgation of section 5103(a)'s implementing regulation, 38 C.F.R. § 3.159. *See Dingess*, 19 Vet.App. at 487 (quoting 66 Fed. Reg. 45,620, 45,622) ("There is no indication that Congress intended that VA review each claim and advise the claimant every time any evidence relevant to it is received. When a decision is reached on a claim, the rating decision document will cite all relevant evidence obtained and considered, as well as any relevant evidence not obtained or considered."). Thus, the Secretary, having been made aware of the interpretation of the regulation now offered by Mr. Locklear, opted to promulgate the regulation after rejecting that interpretation. This is important because, as the Federal Circuit reiterated recently, the Secretary's interpretation of his own regulations "becomes 'of controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *See Smith v. Nicholson*, 451 F.3d 1344, 1350 (Fed. Cir. 2006) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)). For the reasons provided above, we conclude that it is neither.

Nevertheless, it is noteworthy that section 5103(a) speaks to notifying a claimant of information and evidence "not previously provided to the Secretary." Although this certainly does not mandate a "pre-decisional decision," it indicates that some cognitive review of the claim must be made prior to providing the notice and that a generalized or boilerplate notice letter might not suffice in some cases. *See Kent v. Nicholson*, 20 Vet.App. 1, 10 (2006) (holding, in the context of a claim to reopen, that the Secretary is required to "look at the bases for the denial in the prior decision and to respond with a notice letter that describes what evidence would be necessary to substantiate that element or elements required to establish service connection that were found insufficient in the previous denial").

7

## B. Claim for Service Connection for Reflux Disease

Mr. Locklear's argument that the Board erred in failing to consider a claim for service connection for reflux disease is far too terse to warrant detailed analysis by the Court.[4] *See* U.S. VET. APP. R. 28(a)(5) (providing that an appellant's brief must contain "an argument . . . and the reasons for [it], with citations to the authorities . . . relied on"); *see also United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments . . . are waived."). In that regard, Mr. Locklear merely states that at least one doctor "assessed his condition to be the result of gastrophagal reflux" and then concludes that the Board should have considered a claim for service connection for that condition. Appellant's Br. at 5. He makes no effort to explain how the evidence to which he refers amounts to a claim for service connection or why the Board should have considered it as such. The Court therefore cannot conclude that the Board erred in not considering such a claim.[5]

## C. Board's Failure to Provide Adequate Reasons or Bases for

## Rejecting Mr. Locklear's Account of Pain

The Board, in rendering its decision, is required to provide a written statement of the reasons or bases for its "findings and conclusions[] on all material issues of fact and law presented on the record." 38 U.S.C. § 7104(d)(1). The statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table). The Board may commit remandable error when it fails to provide an adequate statement of its reasons or bases. *See Gilbert*, 1 Vet.App. at 57. Here, as explained below, the Court finds the Board's statement of reasons or bases adequate regarding Mr. Locklear's account of pain.

---

[4] On this point, it is of great significance that Mr. Locklear is represented by counsel in this case.

[5] The Court does not agree with the Secretary that such a claim was considered and denied. The portion of the Board decision referred to by the Secretary simply does not reflect that.

Mr. Locklear is incorrect in his assertion that the Board failed to reject evidence that he suffers from "symptoms of pain." Appellant's Br. at 7. In fact, the Board acknowledged Mr. Locklear's pain, but observed "that a symptom of pain is not a disability" and that "the medical evidence of record does not reflect a diagnosis of an underlying disability which causes the complaints of chest pain." R. at 12. Mr. Locklear contends that the Board erred because his pain can be attributed to "scarring on the lungs and pulmonary impairment." Appellant's Br. at 6. That argument is unavailing, particularly because, later in its decision, the Board acknowledged that Mr. Locklear suffers from a lung condition. *See* R. at 12 ("[T]he medical evidence shows that the veteran has findings of chronic scarring of the lungs and a mild restrictive pattern upon pulmonary function testing."). The Board then concluded that "[t]he veteran has not submitted any competent medical evidence relating these pulmonary findings to his period of service" and that "[t]here is no competent evidence of record which associates these findings to service." R. at 12. As the Secretary argues in his brief, whether or not Mr. Locklear suffers from pain, "[t]he absence of a nexus was fatal to th[e] claim." Secretary's Br. at 9; *see Duenas v. Principi*, 18 Vet.App. 512, 519 (2004) (noting that service connection for VA disability compensation purposes requires, among other things, medical evidence of a nexus between the in-service injury or disease and the current disability).

### D. Duty To Provide a Medical Examination or Opinion

Mr. Locklear contends that the Board erred by failing to require VA to provide him with a medical examination. Pursuant to 38 C.F.R. § 3.159(c)(4)(I) (2005), it is necessary that VA provide a medical opinion or examination if the information and evidence of record does not contain sufficient competent medical evidence to decide the claim, but

> (A) Contains competent lay or medical evidence of a current diagnosed disability or persistent or recurrent symptoms of disability;
> (B) Establishes that the veteran suffered an event, injury or disease in service, or has a disease or symptoms of a disease listed in § 3.309, § 3.313, § 3.316, and § 3.317 manifesting during an applicable presumptive period provided the claimant has the required service or triggering event to qualify for that presumption; and
> (C) Indicates that the claimed disability or symptoms may be associated with the established event, injury, or disease in service or with another service-connected disability.

*See* 38 U.S.C. § 5103A(d)(2).

9

The Court in *Duenas*, made clear that when the Board considers whether a medical examination or opinion is necessary under section 5103A(d) and § 3.159(c)(4), it must provide a written statement of the reasons or bases for its conclusion pursuant to 38 U.S.C. § 7104(d)(1), and that, absent a finding of nonprejudicial error, vacatur and remand is warranted where it fails to do so. 18 Vet.App. 512, 517 (2004) (citing *Tucker v. West*, 11 Vet.App. 369, 374 (1998)). In this case, as explained below, the Board's summary conclusion–with no analysis whatsoever–fails to meet the requirements articulated in *Duenas* and therefore frustrates judicial review.

The Board's entire analysis concerning Mr. Locklear's entitlement to a VA medical examination or opinion was as follows: "The Veteran was not afforded a VA medical examination. However, the Board finds that such examination was not necessary since there was no competent evidence of a chest disability or symptoms in service and there is no competent evidence of an association between the claimed chest disability and service." R. at 4.

Later in its decision, the Board acknowledged "that the medical evidence shows that the veteran has findings of chronic scarring of the lungs and a mild restrictive pattern upon pulmonary function testing." R. at 12. Thus, the Board conceded that Mr. Locklear had presented competent evidence of a current disability or persistent or recurrent symptoms of a disability.[6] *See* 38 C.F.R. § 3.159(c)(4)(I)(A). In addition, nowhere in its decision did the Board dispute Mr. Locklear's assertion that he had been exposed to tear gas during service. In fact, the Board recounted without comment Mr. Locklear's testimony that for three days following his in-service gas exposure "he had blood in his sputum and . . . a burning sensation in his chest." R. at 5-6. Thus, the Board acknowledged that Mr. Locklear had established an "event . . . in service" sufficient to satisfy the second prong of § 3.159(c)(4)(I).

However, regarding the third prong of the regulation, the Board failed to explain *why* Mr. Locklear's lung scarring and symptoms of chest pain could not have been associated with his in-service exposure to tear gas. *See Duenas*, 18 Vet.App. 512, 516-18 (2004).

---

[6] In addition, although pain itself is not a disability under VA regulations, it certainly may constitute a symptom of a disability about which Mr. Locklear is competent to testify. The fact that Mr. Locklear reported chest pains may alone suffice to satisfy the first prong of the regulation. *See McLendon v. Nicholson,* 20 Vet.App. 79, 84 (2006) ("Mr. McLendon is fully competent to testify to any pain he may have suffered.").

In *McLendon v. Nicholson*, the Court observed that the third prong of § 3.159(c)(4)(I), which requires that the evidence of record "indicates" that "the claimed disability or symptoms may be associated with the established event," establishes "*a low threshold*." 20 Vet.App. 79, 83 (2006) (emphasis added). Admittedly, the record contains an April 2001 letter from a private doctor, Rhonda S. Lowry, in which she reported that Mr. Locklear attributed his chest pains to gas exposure, Dr. Lowry opined that she was "not familiar with any symptoms related to this." R. at 53. She also reported telling Mr. Locklear that she was unsure of a relationship between gas exposure and his symptoms and that there was no medical reason for his symptoms. *Id.* Another private doctor, Joseph Roberts, reported in May 2002 that Mr. Locklear attributed his chest pain to in-service gas exposure. Dr. Roberts then concluded: "I am not aware of symptoms related to this but as to date we have not found a medical reason for his condition." R. at 238. Although the Board characterized those two statements as not supporting Mr. Locklear's service-connection claim, in light of the fact that both doctors conceded to being unfamiliar with the effects of gas exposure, it would be unfair to characterize those opinions as suggesting that there is no potential relationship between Mr. Locklear's current symptoms and his in-service exposure to gas. *See* R. at 11 ("[B]oth of these doctors indicated that they were not familiar with symptoms related to C.S. gas exposure."); *id.* ("They did not attribute the chest pain to in-service exposure to C.S. gas."). Indeed, the Board's conclusion that those medical reports do not favor an award of service connection "does not mean necessarily that the evidence does not 'indicate' that there 'may be an association' between an in-service injury and a current disability." *McLendon*, 20 Vet.App. at 84 (quoting 38 C.F.R. § 3.159(c)(4)(I)(C)). In any event, none of this was discussed by the Board in the context of whether Mr. Locklear is entitled to a VA medical examination or opinion.

Thus, although Mr. Locklear's other arguments are unavailing, in light of the aforementioned reasons-or-bases error, the Court will vacate the April 2004 Board decision and remand the matter for readjudication. On remand, the Board will afford Mr. Locklear a VA medical examination, obtain a medical opinion from a qualified expert, or explain with adequate reasons or bases why, in light of *McLendon*, *Duenas*, and the language of the statute and regulation, Mr. Locklear is not entitled to such assistance on the part of VA.

## III. CONCLUSION

On consideration of the foregoing, the Court VACATES the April 12, 2004, Board decision and REMANDS the matter for readjudication.