Citation Nr: 1619679 
Decision Date: 05/16/16 Archive Date: 05/27/16

DOCKET NO. 13-30 294 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New York, New York


THE ISSUES

1. Entitlement to service connection for sleep apnea.

2. Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD), depressive disorder, and adjustment reaction with mixed emotions. 


REPRESENTATION

Veteran represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

R. Kipper, Associate Counsel


INTRODUCTION

The Veteran served on active duty from June 1976 to July 1979. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a July 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Jackson, Mississippi. Jurisdiction subsequently transferred to the New York, New York RO.

In April 2015, the Veteran testified at a hearing before the undersigned. A transcript has been associated with the claims file. Subsequent to the April 2015 hearing, the Veteran submitted additional medical evidence accompanied by a waiver of initial RO consideration. See 38 C.F.R. § 20.1304 (2015); see also 38 U.S.C.A. § 7105(e)(1) (West 2014).

The issue of entitlement to service connection for PTSD has been re-characterized as encompassing all identified psychiatric disabilities. See Clemons v. Shinseki, 23 Vet. App. 1 (2009) (the scope of a claim pursued by a claimant includes any diagnosis that may reasonably be encompassed by the claimant's description of the claim, reported symptoms, and the other information of record).

This appeal was processed using the Veterans Benefits Management System (VBMS) and Virtual VA paperless claims processing systems. Therefore any future consideration of the Veteran's claim should take into account the existence of the electronic record.

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if further action is required.


REMAND

Sleep Apnea

The Veteran contends that his currently diagnosed sleep apnea had its onset in service. He reports that he first experienced sleep problems in service, including daytime sleepiness and feeling drained. See April 2015 Hearing Testimony. 

Service treatment records are silent for treatment or complaints related to sleep apnea; however, at the April 2015 hearing, the Veteran testified that he did not seek treatment because he thought his symptoms were "normal." Post-service VA treatment records show that the Veteran has been diagnosed with severe sleep apnea. See April 2011 VA Treatment Record. 

In May 2015, the Veteran submitted a Sleep Apnea Disability Benefits Questionnaire (DBQ) (VA Form 21-0960L-2) completed by Dr. M.A, who indicated that because the Veteran reported that he was overweight in service, "it is reasonable given this information that his sleep apnea antedates the diagnosis in 2011." The opinion indicates that the disability may be related to service, but is equivocal.

The Veteran has not been afforded a VA examination. VA's duty to assist includes providing a medical examination and obtaining an opinion when it is necessary to make a decision on a claim. 38 U.S.C.A. § 5103A(d); 38 C.F.R. § 3.159. Such development is necessary if the information and evidence of record does not contain sufficient competent medical evidence to decide the claim, but (1) contains competent evidence of diagnosed disability or symptoms of disability, (2) establishes that the Veteran suffered an event, injury or disease in service, or has a presumptive disease during the pertinent presumptive period, and (3) indicates that the claimed disability may be associated with the in-service event, injury, or disease, or with another service-connected disability. 38 C.F.R. § 3.159(c)(4); McLendon v. Nicholson, 20 Vet. App. 79, 83-86 (2006). The threshold for finding a link between current disability and service so as to require medical examination is low. Locklear v. Nicholson, 20 Vet. App. 410 (2006); McLendon, 20 Vet. App. at 83.

In the present case, the Veteran has a current diagnosis of sleep apnea. Additionally, the Veteran competently testified that he had symptoms of sleep apnea in service. See Charles v. Principi, 16 Vet. App. 370 (2002). As such, because there is an indication that symptoms of sleep apnea were possibly present during his active duty, coupled with medical evidence indicating that sleep apnea may have had its onset in service, the Board finds that the Veteran should be provided a VA examination to determine whether the Veteran's sleep apnea is related to service. McLendon v. Nicholson, 20 Vet. App. 79 (2006).

Acquired Psychiatric Disorder

The Veteran seeks service connection for PTSD, which he contends is related to his job of inventorying and maintaining nuclear warheads while stationed in Germany. He asserts that he was constantly in fear while working with the warheads due to the need to handle the devices carefully. See June 2012 VA Treatment Note. 

The Veteran's service treatment records are silent for complaints, findings, diagnosis, or treatment for any mental disorder. His DD214 lists his military occupational specialty as stock control supplyman and confirms that he was stationed in Germany from November 1976 to July 1979. 

Post-service VA treatment records show multiple psychiatric diagnoses, including PTSD, depressive disorder, and adjustment reaction with mixed emotions. An April 2009 record shows that the Veteran reported a history of emotional issues including "flashback dreams" of being in combat. A May 2011 record shows that the Veteran "diagnosed himself with PTSD" due to anger issues. He reported being traumatized while stationed in Germany because "we were trained to blow up things and it was dangerous." The treatment provider noted that the Veteran could name no particular episode that was traumatic. The diagnoses were "Alcohol Dependence; Alcohol Induced Mood Disorder; r/o Alcohol Induced Sleep Disorder; Cocaine Dependence in reported remission for two years," and the Veteran became "visibly disappointed" when told that he was not being diagnosed with PTSD. An August 2011 record shows a diagnosis of depressive disorder. 

In December 2011, a VA social worker diagnosed the Veteran with PTSD, but did not identify any stressors underlying that diagnosis. Records from April 2012 show that the Veteran reported daily stress while serving in Germany due to not wanting to make a mistake with nuclear weapons. He also "shared a disturbing incident," however; there is no indication in the record as to what this incident entailed. The Veteran reported experiencing "trauma nightmares" related to his military occupational specialty. In another session in April 2012, the Veteran reported that "he experiences frequent nightmares in terms of making a mistake with a nuclear weapon." 

A June 2012 VA treatment record shows that the Veteran reported anxiety, trepidation, and fear associated with working with nuclear warheads due to the need to handle these devices gently and the potential concern that something could unexpectedly happen. The Veteran reported one incident in which a nuclear warhead rolled over the heel of his foot, which caused a bone to crack. He reported intense fear in this situation with the associated thought that he was going to die. The Veteran reported that the dream he has the most involves him smoking a cigarette which detonated one of the bombs, which causes soldiers to die and he serves time in jail. The treating psychologist noted that this was not an event that actually happened. The Veteran reported the following symptoms: irritability/anger, hypervigilence, difficulty staying asleep, and avoidance. The psychologist noted that the Veteran "denied flashbacks, startle response, restricted range of affect, and reported that he mostly dreams of an event that did not happen in actuality." The psychologist concluded that "[a]s such, this veteran is diagnosed with Adjustment Reaction with mixed emotions and conduct. There are no further VA mental health treatment records contained in the claims file. 

In May 2015, the Veteran submitted a Review Posttraumatic Stress Disorder (PTSD) Disability Benefits Questionnaire (DBQ) (VA Form 21-0960P-3) completed by VA psychiatrist, Dr. E.C. The psychiatrist indicated that he reviewed "current medical records" and diagnosed the Veteran with PTSD in accordance with the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV). He also indicated that there was no other psychiatric disorder present. Regarding the Veteran's stressors, Dr. E.C. indicated that the Veteran "reports multiple, significant stressful incidents that have contributed to his current psychological and physical conditions." He also opined that "the Veteran's post traumatic stress stems from his military experiences, more specifically, while he was stationed in Germany, working on a nuclear weapons base." 

The Board finds that May 2015 PTSD DBQ report and existing mental health treatment records are insufficient for deciding the claim. In this regard, the medical evidence is in conflict as to whether the Veteran has a diagnosis of PTSD based on a verified in-service stressor. Additionally, the May 2015 report does not attribute PTSD to any specific stressor, and it is unclear whether the diagnosis was based on a review of the entire record. 

Moreover, effective August 4, 2014, VA amended the portion of the Rating Schedule dealing with mental disorders so as to replace outdated references to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV), with references to the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-V). See 79 Fed. Reg. 149, 45094 (August 4, 2014). VA directed that the changes be applied only to applications for benefits received by VA or pending before the agency of original jurisdiction (AOJ) on or after August 4, 2014, but not to claims certified to, or pending before, the Board, the Court of Appeals for Veterans Claims (CAVC), or the United States Court of Appeals for the Federal Circuit. As the Veteran's claim was certified to the Board on August 19, 2014, (after August 4, 2014), a diagnosis of PTSD must conform to DSM-V. See 38 C.F.R. § 4.125(a) (2015).

The Board notes that, to date, the Veteran has never been afforded a VA psychiatric examination and medical opinion for this claim. In light of the foregoing evidence, including the Veteran's statements and post service diagnoses of PTSD, depression, and adjustment reaction, a VA examination is needed to assess whether any current psychiatric disorder is related to service. McLendon v. Nicholson, 20 Vet. App. at 79.

Additionally, it does not appear that the AOJ attempted to verify claimed stressors. The Board finds that on remand the Veteran should be provided with one more opportunity to provide more specific information regarding his claimed in-service stressors, to include the additional stressor referenced above of having a nuclear warhead dropped on his foot. If adequate information is obtained from the Veteran, further efforts should be made to verify his claimed stressors. Moreover, although the July 2011 rating decision cited as evidence the Veteran's "201 military personnel file," no such records appear in the claims file. Therefore, a remand to obtain all outstanding service personnel records is required.

Lastly, with regard to both issues, because the record indicates that the Veteran has been receiving ongoing VA treatment, any updated VA treatment records should be obtained and associated with the claims file.

Accordingly, the case is REMANDED for the following action:

1. Obtain and associate with the Veteran's claims file all outstanding VA treatment records dated from September 2013 to the present documenting treatment for sleep apnea or psychiatric disabilities. 

2. Obtain and associate with the claims file the Veteran's complete service personnel records. 

Efforts should continue until the records are obtained, or it is reasonably certain they do not exist or further efforts would be futile. If any records cannot be obtained, the Veteran must be notified of the missing records; the attempts made; and what further actions will be taken.

3. Ask the Veteran again to complete a stressor questionnaire. He should be asked for any additional information needed to obtain credible supporting evidence.

Should the Veteran provide sufficient information regarding his claimed stressors, request supporting evidence from the service department or other indicated sources.

4. After all available records have been associated with the claims file; schedule the Veteran for a VA examination to determine whether the currently diagnosed sleep apnea is related to service. 

The examiner should indicate in the report that the claims file was reviewed.

The examiner should provide an opinion as to whether it is at least as likely as not (i.e. 50 percent or greater probability) that the Veteran's sleep apnea had its onset in service or is related to any in-service disease, event, or injury, to include the Veteran's reports of sleepiness and fatigue; or obesity in service. 

The examiner should specifically comment on the May 2015 opinion of Dr. M.A. who indicated that the Veteran's sleep apnea predated his April 2011 diagnosis and may have been present in service.

The examiner should comment on whether the Veteran's reports, if accepted, would be sufficient with the other evidence of record to show that sleep apnea (at least as likely as not) began in service or is otherwise related to service. The examiner should also report whether there is any medical reason to reject the Veteran's reports. The absence of treatment records is not a sufficient reason, by itself, for rejecting the Veteran's reports.

If the examiner is unable to provide an opinion without resort to speculation, he or she should explain whether the inability is due to the limits of the examiner's medical knowledge, medical knowledge in general or there is evidence that, if obtained, would permit the opinion to be provided.

5. After all available records have been associated with the claims file; schedule the Veteran for a VA examination to determine whether any acquired psychiatric disability is related to service.

The examiner should indicate in the report that the claims file was reviewed.

The examiner should render opinions as to the following:

(a) For any acquired psychiatric disorders found to be present at any time since 2010; provide an opinion as to whether it began in service or is the result of a disease or injury (including stressors) in service.

(b) Specifically state whether the Veteran has met the criteria for a diagnosis of PTSD at any time since 2010. If a diagnosis of PTSD is not deemed appropriate, explain what criteria are not met; and whether previous diagnoses were made in error or the disorder is in remission. If in remission, treat the disorder as a current disability.
 (c) If a diagnosis of PTSD is appropriate, the examiner must identify the specific stressor(s) underlying the PTSD diagnosis.

The examiner should also opine whether the stressor involves fear of hostile military or terrorist activity.

(d) The examiner must acknowledge and discuss the Veteran's reports of anxiety and fear related to his handling of nuclear warheads while stationed in Germany.

If the examiner is unable to provide an opinion without resort to speculation, the examiner should explain whether this is due to the limits of the examiner's medical knowledge, the limits of medical knowledge in general, or there is additional evidence that would permit the needed opinion to be provided. 

The absence of evidence of treatment for psychiatric symptoms in the service treatment records cannot, standing alone, serve as the basis for a negative opinion. 

The examiner should provide a reason for the opinions. 

The examiner should state whether if the Veteran's reports were accepted, they would be sufficient to show that a current psychiatric disability is the result of an in-service stressor or had its onset in service. If the Veteran's reports would be sufficient, the examiner should state whether there is any medical reason for rejecting those reports (other than the absence of supporting clinical evidence, unless it would be medically expected that the Veteran would have sought treatment or such record would exist).

6. If any benefit on appeal remains denied, issue a supplemental statement of the case. Then return the case to the Board, if in order.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
Mark D. Hindin
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2015).