# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 17-0285

SEAN A. RAVIN, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided November 2, 2018)

*Kenneth M. Carpenter*, of Topeka, Kansas, was on the brief for the appellant.

*James L. Heiberg*, with whom *Emily C. Purcell*, Acting Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; and *James M. Byrne*, General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before DAVIS, *Chief Judge*, and PIETSCH and FALVEY, *Judges*.

PIETSCH, *Judge*: The appellant, attorney Sean A. Ravin, appeals through counsel a September 29, 2016, Board of Veterans' Appeals (Board) decision in which the Board denied him entitlement to "payment of attorney fees based on a grant of compensation benefits by a rating decision of April 7, 2010." Record (R.) at 3-10. This case concerns the propriety and proper interpretation of the parts of 38 C.F.R. § 14.636(g)(3), (h)(4) stating that a direct-pay fee agreement between an attorney and a veteran claimant must be "filed with the agency of original jurisdiction within 30 days of its execution." On August 14, 2018, the Court formed a panel to address that issue.

On May 24, 2018, the appellant filed a motion for oral argument. The Court concludes that oral argument will not materially assist its deliberations. *See O'Brien v. Wilkie*, 30 Vet.App. 21, 24 (2018). That motion is therefore denied. This appeal is timely and the Court has jurisdiction over the matters on appeal pursuant to 38 U.S.C. §§ 7252(a) and 7266. For the reasons that follow, the Court will affirm the Board's decision.

## I. BACKGROUND

The appellant represented veteran Norman E. Cook before VA. Mr. Cook is not involved in the case on appeal. On December 1, 2009, the appellant and Mr. Cook entered into a contractual agreement that required Mr. Cook to pay the appellant "a contingent fee equal to twenty percent (20%) of past-due benefits awarded due to or flowing from" his representation. R. at 98-103. The Board received a copy of that agreement on December 11, 2009. R. at 98.

On March 29, 2010, the Board granted Mr. Cook entitlement to an earlier effective date for disability benefits compensating him for multiple keratosis and sun damage. R. at 138-43. On April 7, 2010, the VA regional office (RO) in Muskogee, Oklahoma, implemented the Board's decision. R. at 128-31, 135-37. The Board and RO decisions entitled Mr. Cook to a significant payment of past-due benefits.

On April 27, 2010, the appellant mailed his fee agreement to the Muskogee RO and requested that it withhold his contingency fee from Mr. Cook's past-due benefits and remit that fee to him. R. at 120-27. In a May 2010 letter, the Muskogee RO informed the appellant that it did not withhold his contingency fee from Mr. Cook's past-due benefits and that it would not directly pay that fee to him. R. at 106-07. The RO explained that because it did not receive a copy of his fee agreement until more than 30 days after the date of execution, it "was not timely filed." *Id.*

The appellant filed a Notice of Disagreement with the RO's decision and later perfected his appeal. R. at 64-67, 94-97. In March 2013, the Board denied the appellant's claim. R. at 30-37. He appealed and, on December 30, 2015, the Court vacated the Board's decision and remanded his case for additional proceedings. R. at 706-14. On September 29, 2016, the Board issued the decision presently under review. R. at 3-10.

## II. ANALYSIS

"To the extent that past-due benefits are awarded in any proceeding before the Secretary, the Board[], or the [Court], the Secretary may direct that payment of any fee to an agent or attorney under a fee arrangement . . . be made out of such past-due benefits." 38 U.S.C. § 5904(d)(3). A qualifying fee agreement is one "contingent on whether or not the matter [before VA] is resolved in a manner favorable to the claimant" and that authorizes the earned fee "to be paid to the agent or attorney by the Secretary directly from any past-due benefits awarded on the basis of the claim." 38 U.S.C. § 5904(d)(2)(A)(i), (ii). "[A] claim shall be considered to have been resolved in a

manner favorable to the claimant if all or any part of the relief sought is granted." 38 U.S.C. § 5904(d)(2)(B). Finally, the fee subject to the fee agreement may not "exceed 20 percent of the total amount of any past-due benefits awarded on the basis of the claim." 38 U.S.C. § 5904(d)(1).

The Secretary implemented Congress's designs via 38 C.F.R. § 14.636. That provision contains an extensive list of definitions and requirements for parties who seek to represent veterans under contracts that establish a contingent entitlement to a percentage of past-due benefits. The Secretary concedes that the appellant met every requirement save one. In § 14.636(g)(3), the Secretary wrote that a "copy of a direct-pay fee agreement . . . must be filed with the agency of original jurisdiction within 30 days of its execution." Then, in § 14.636(h)(4), the Secretary wrote that an "agent or attorney must file with the agency of original jurisdiction within 30 days of the date of execution a copy of the agreement providing for the direct payment of fees out of any benefits subsequently determined to be past due."

As always, if the Court is able to discern the plain meaning of the regulations in question, then its work is done and that meaning controls. *Atencio v. O'Rourke*, 30 Vet.App. 74, 82 (2018). The basic meaning of these regulations is plain as day. Just as they say, an attorney must file a direct-pay fee agreement with the agency of original jurisdiction within 30 days of the date of execution.

Mr. Cook signed the direct-pay fee agreement prepared by the appellant on November 27, 2009. The appellant signed it on December 1, 2009. Both parties agree that the date the appellant signed it is the date of execution. The Board concluded that the appellant did not submit his agreement to the agency of original jurisdiction, in this case the Muskogee RO, until April 27, 2010, many months after the date of execution. He does not dispute that factual finding. Because the appellant did not submit his fee agreement to the agency of original jurisdiction within 30 days, he did not meet the requirement set forth in §§ 14.636(g)(3) and (h)(4).

The appellant does not seriously challenge the application of fact to law contained in the preceding paragraph. He does, however, raise a marginally more difficult interpretive question. The regulations under consideration demand that agents and attorneys do something, namely submit their fee agreements to the agency of original jurisdiction within 30 days of execution. They do not, however, specifically set forth the penalty for failing to do that act. The appellant argues, therefore, that the Board had no authority to conclude that the penalty for failing to act in

3

accordance with §§ 14.636(g)(3) and (h)(4) is that VA will not directly pay fees guaranteed by an otherwise valid fee agreement.

The appellant's focus is too narrow. The plain meaning inquiry concerns both the definitional understanding of the regulation called into question and "its structure." *Petitti v. McDonald*, 27 Vet.App. 415, 422 (2015). Thus, "[w]hen assessing the meaning of a regulation, words should not be taken in isolation but rather read in the context of the regulatory structure and scheme." *Atencio*, 30 Vet.App. at 82.

Section 14.636(g) is titled "[f]ee agreements" and discusses general requirements for all types of fee agreements and specific requirements for direct-pay fee agreements. In its opening paragraph, it states that fee agreements "must be in writing and signed by both" parties. 38 C.F.R. § 14.636(g). Paragraph 1 contains a list of five items that must be present for the fee agreement "[t]o be valid." 38 C.F.R. § 14.636(g)(1)(i)-(v). Paragraph 2 concerns direct-pay fee agreements like the one at issue here. It commands that such agreements must "clearly specify if VA is to pay the agent or attorney directly out of past due benefits." 38 C.F.R. § 14.636(g)(2). If it does not or if it demands a contingency fee "greater than 20 percent of past-due benefits," then it "shall be considered to be an agreement in which the agent or attorney is responsible for collecting any fees for representation from the claimant without assistance from VA." *Id*. Finally, paragraph 3 contains the command that a "copy of a direct-pay fee agreement, as defined in paragraph (g)(2) of this section, must be filed with the agency of original jurisdiction within 30 days of its execution." 38 C.F.R. § 14.636(g)(3).

Section 14.636(h) discusses with greater specificity the requirements for a practitioner to obtain direct payment of his or her share of past-due benefits. The provisions of that paragraph are "[s]ubject to the requirements of the other paragraphs of this section[.]" 38 C.F.R. § 14.636(h)(1). The reiterated command to file a direct-pay agreement with the agency of original jurisdiction within 30 days is accompanied by the phrase "[a]s required by paragraph (g)(3) of this section." 38 C.F.R. § 14.636(h)(4).

Section 14.636(h) specifically incorporates the provisions contained in § 14.636(g), and those provisions contain the requirements for a valid direct-pay fee agreement. The structure of these two paragraphs, particularly the cross-referencing language, plainly demonstrates that properly and timely filing that agreement with the agency of original jurisdiction is one of those requirements. The penalty for failing to execute and file a valid direct-pay fee agreement also is

4

spelled out. The contract remains in force. VA will not, however, assist in "collecting any fees." 38 C.F.R. § 14.636(g)(2).

The appellant implies that the two regulatory phrases that he challenges are the only two unenforceable requirements for a valid direct-pay fee agreement in §§ 14.636(g) and (h). The general principle of analyzing regulatory schemes as a whole and the specific principle of *noscitur a sociis* guide us in the opposite direction. *See Lagos v. United States*, 138 S. Ct. 1684, 1688-89 (2018) ("statutory words are often known by the company they keep"). Once again, we conclude that the requirement to file a fee agreement at the agency of original jurisdiction within 30 days of execution is an enforceable requirement for direct-pay fee agreement validity like all others found in §§ 14.636(g) and (h) and that failure to properly file a fee agreement carries the same consequences as failure to do any other required act in those provisions.

Consequently, the Court concludes that the language and structure of §§ 14.636(g) and (h) plainly reveal that if an agent or attorney fails to file an otherwise valid direct-pay fee agreement with the agency of original jurisdiction within 30 days of the date of execution, then VA is no longer responsible for withholding earned contingency fees from past-due benefits and paying them directly to the practitioner. In addition to the reasons given above, finding otherwise would render these regulations superfluous, void, or insignificant, which the Court must not do. *See Jensen v. Shulkin*, 29 Vet.App. 66, 74 (2017). The Board conformed to that interpretation in this case.

The appellant makes a number of additional attempts to undermine §§ 14.636(g), (h). Undergirding all his arguments, however, is an incorrect description of the effect of the Board's conclusion. The appellant suggests that the Board is seizing or denying fees that are due to him, nullifying his contract with Mr. Cook, or sanctioning him for failure to properly file his fee agreement.

As § 14.636(g)(2) makes clear, the Board is doing nothing of the sort. The appellant remains entitled to the fees that he earned. He may use all available remedies to obtain them from Mr. Cook. To the extent that no remedies are available to him, that is a consequence of poor contract drafting on his part, not VA's actions. The only thing that VA will not do is pay his fees directly to him. It is not seizing or denying them, it only has decided not to enter the role of paymaster because the appellant did not meet the requirements necessary for it to do so.

5

The appellant suggests that the Secretary overstepped his authority when he promulgated §§ 14.636(g)(3) and (h)(4). He does not, however, flesh out this argument, apply it to appropriate caselaw, or come to grips with important parts of the statutory scheme. He argues only that the applicable regulations "simply do not supercede [sic]" the Secretary's statutory obligations without explaining why. Appellant's Brief at 12.

The structure of section 5904(d) undermines the appellant's argument. That provision has three subparts. The first commands that a contingency fee may not exceed 20% of past-due benefits. 38 U.S.C. § 5904(d)(1). The second describes what a fee agreement "is." 38 U.S.C. § 5904(d)(2). Congress's only instruction to the Secretary is found in section 5904(d)(3). There Congress stated that "[t]o the extent that past-due benefits are awarded . . . the Secretary *may* direct that payment of any fee to an agent or attorney under a fee agreement . . . be made out of such past-due benefits." 38 U.S.C. § 5904(d)(3) (emphasis added). Not only does this provision not contain the command that the appellant asks the Court to adopt, but it seems to be expressly discretionary. *See King v. Shinseki*, 26 Vet.App. 484, 490 (2014) ("The use of the word 'may' . . . indicates that [the subject action] is expressly committed to the Secretary's discretion"). The obligation to honor a direct-pay fee agreement comes through the Secretary's regulations, and those regulations state that the obligation comes into effect only when certain requirements are met. *See Snyder v. Gober*, 14 Vet.App. 154, 164 (2000).

The Secretary, of course, "has authority to prescribe all rules and regulations which are necessary or appropriate to carry out" Congress's statutory directives. 38 U.S.C. § 501(a). In section 5904, Congress both expressly confirmed and perhaps enhanced that authority in the context of fee agreements. Congress wrote that an "agent or attorney . . . shall file a copy of any fee agreement . . . with the Secretary *pursuant to regulations prescribed by the Secretary*." 38 U.S.C. § 5904(c)(2) (emphasis added). When it comes to the act of filing a fee agreement, Congress left the field and gave the Secretary permission to regulate in whatever manner he felt necessary.

"If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 843-44 (1984). The Court sees no evidence that the regulations at issue (which are obviously

intended to allow the Secretary to process fee agreements as efficiently as possible) spill the bounds of the Secretary's authority. Indeed, it is absurd to assume that Congress believed that no consequences should attend "regulations prescribed by the Secretary." 38 U.S.C. § 5904(c)(2). Furthermore, the regulations the Secretary chose seem to be eminently reasonable, carefully set forth, and easy to follow. Nothing in section 5904 indicates that Congress would disapprove either the Secretary's filing requirements or the penalty for failing to adhere to them.

The appellant next asks the Court to conclude that misfiling a fee agreement at the Board satisfies the requirement found in §§ 14.636(g)(3) and (h)(4). The Board, of course, is not an agency of original jurisdiction, so a misfiling at the Board does not comport with the express commands found in §§ 14.636(g)(3) and (h)(4). The regulation also makes clear that when the Secretary said agency of original jurisdiction, he meant agency of original jurisdiction. The Secretary wrote that a "copy of any fee agreement that is not a direct-pay fee agreement must be filed with the Office of General Counsel within 30 days of its execution" and then gave the specific address in the body of the regulation where he wanted those types of agreements sent. 38 C.F.R. § 14.636(g)(3). He then wrote that "[a]ll documents relating to the adjudication of a claim for VA benefits . . . must be filed with the agency of original jurisdiction, Board[], or other VA office as appropriate." *Id.* Lest there be any residual doubt, those specific instructions reveal that the Secretary did not intend the phrase "agency of original jurisdiction" to encompass the Board. The Secretary showed that if he wanted to say agency of original jurisdiction *and* Board, he knew very well how to do so. To hold otherwise would be to craft an absurdity. *See Atencio*, 30 Vet.App. at 83.

The appellant asserts that the Court should import rules that have developed around its application of the doctrine of equitable tolling into the present context. He does not, however, argue that the time to file his fee agreement should be equitably tolled as of the date that he filed at the Board, demonstrate why equitable tolling law is operative in this area, or otherwise show the basis for what he calls his "reasonable expectation that the Board would have forwarded his agreement to the agency of original jurisdiction." Appellant's Brief at 10; *see Locklear v. Nicholson*, 20 Vet.App. 410, 416 (2006) (holding that the Court will not entertain underdeveloped arguments).

Furthermore, the appellant does not acknowledge that the equitable tolling precedent that he cites is largely premised on the notion that the veterans benefits system is paternalistic and not

unduly rigid when it comes to applying rules to the typical claimant. He is not a typical veteran claimant, but an attorney who is expected to properly execute the instructions contained in a very plain regulation. The equitable principles at the heart of the equitable tolling caselaw were not intended for him and it is very difficult to understand how a licensed attorney inadvertently failing to follow a plainly stated and straightforward instruction is extraordinary and shows due diligence. *See Bazalo v. Brown*, 9 Vet.App. 304, 310-11 (1996) (en banc) ("Counsel, unlike a pro se appellant, is held to a higher standard and is responsible for following the dictates of the statute"), *rev'd on other grounds sub nom. Bazalo v. West*, 150 F.3d 1380 (Fed. Cir. 1998); s*ee also Shephard v. West*, 11 Vet.App. 518, 522 (1998). The Court is not persuaded by his equitable tolling-based arguments.

Finally, the appellant insists in his reply brief that he "**does not** seek relief from his obligation or the obligation of any other attorney to file with the agency of original jurisdiction within 30 days of its execution a copy of a fee agreement." Reply Brief at 2 (emphasis is the appellant's). But that is precisely what he requests. He wants the Court either to deem that failure to adhere to the Secretary's instructions carries no penalty or to paper over his filing mistake by rewriting "must file with the agency of original jurisdiction" to read "may file at any office in VA." As it has said time and again, the Court is not in the business of rewriting regulations. *See Atencio*, 30 Vet.App. at 84.

To the extent that the Board's decision contains errors, they are harmless. *See* 38 U.S.C. § 7261(b)(2); *Shinseki v. Sanders*, 556 U.S. 396, 406 (2009). All arguments raised by the appellant that the Court did not directly address have not been pled with the specificity necessary for the Court to consider them. *See Locklear*, 20 Vet.App. at 416. The Court concludes that, because the appellant did not submit a copy of his direct-pay fee agreement to the agency of original jurisdiction within 30 days of its date of execution, VA had no obligation to withhold his fees from Mr. Cook's past-due benefits and pay them directly to him.

### III. CONCLUSION

The appellant's motion for oral argument is denied. After consideration of the parties' briefs and the record, the Board's September 29, 2016, decision is AFFIRMED.