Citation Nr: 1641959 
Decision Date: 10/31/16 Archive Date: 11/08/16

DOCKET NO. 07-29 105 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to service connection for sinusitis.

2. Entitlement to service connection for gastroenteritis.

3. Entitlement to service connection for bilateral hearing loss.

4. Entitlement to service connection for tinnitus.

5. Entitlement to an increased rating for a right shoulder disability, currently evaluated as 40 percent disabling.

6. Entitlement to an increased rating for a left ankle disability, currently evaluated as 10 percent disabling.

7. Entitlement to a total rating based on individual unemployability due to service connected disabilities (TDIU). 


REPRESENTATION

Veteran represented by: Texas Veterans Commission


WITNESSES AT HEARING ON APPEAL

The Veteran and his spouse


ATTORNEY FOR THE BOARD

J. L. Prichard, Counsel


INTRODUCTION

The Veteran had active service from February 1954 to March 1962.

These claims come before the Board of Veterans' Appeals (Board) on appeal of a March 2007 rating decision and an August 2010 rating decision of the Waco, Texas, Regional Office (RO) of the Department of Veterans Affairs (VA). 

The Veteran and his spouse testified in support of the claims for increased ratings during a hearing held at the RO before the undersigned Veterans Law Judge in May 2010. These issues were previously before the Board in July 2010 and January 2012 when they were remanded for additional development. 

In the April 2011 substantive appeal of the four service connection claims, the Veteran requested a hearing at the RO before a Veterans Law Judge. He withdrew this request in February 2013 and asked that the appeal be forwarded to the Board for a decision. All issues listed on the first page of this decision were certified to the Board in April 2015. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issues of entitlement to an increased rating for a right shoulder disability, entitlement to an increased rating for a left shoulder disability, and TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The Veteran does not have a current diagnosis of sinusitis or a similar disability. 

2. The Veteran does not have a current diagnosis of gastroenteritis or a similar disability. 

3. The Veteran is presumed to have been sound upon entering active service; service treatment records show bilateral sensorineural hearing loss prior to discharge from active service. 

4. The evidence establishes that the Veteran currently has bilateral hearing loss as defined by VA regulation. 

5. The Veteran is competent to state that he has tinnitus, and the Board finds that his contentions that the tinnitus began in service and have continued since that time are credible. 


CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for sinusitis have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107(b) (West 2014); 38 C.F.R. § 3.303(a) (2015). 

2. The criteria for entitlement to service connection for gastroenteritis have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107(b) (West 2014); 38 C.F.R. § 3.303(a) (2015). 

3. The criteria for entitlement to service connection for bilateral hearing loss have been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 5107(b) (West 2014); 38 C.F.R. §§ 3.303(a), 3.304(b), 3.385 (2015). 

4. The criteria for entitlement to service connection for tinnitus have been met. 38 U.S.C.A. §§ 1110, 1131, 5107(b) (West 2014); 38 C.F.R. § 3.303(a) (2015). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VCAA

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations imposes obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). 

The Board finds that the duty to notify and duty to assist the Veteran has been met for the claims for entitlement to service connection for hearing loss and tinnitus. Furthermore, given the favorable nature of this decision, any failures in the duty to notify or duty to assist are harmless error, as it has failed to result in any prejudice to the veteran. 

As for the other claims for service connection, the Veteran was provided with complete VCAA notification in a May 2010 letter that was provided prior to initial adjudication. The duty to notify has been met. 

The Board also finds that the duty to assist has been met. The Veteran has been afforded a VA examination for his claimed gastroenteritis. The Veteran's VA treatment records have also been obtained. He has not identified any pertinent private medical records, and he withdrew his request for a hearing. 

The Veteran was not provided a VA examination in conjunction with his claim for service connection for sinusitis. 

Under the VCAA, VA is obliged to provide an examination when the record contains competent evidence that the claimant has a current disability or signs and symptoms of a current disability, the record indicates that the disability or signs and symptoms of disability may be associated with active service; and the record does not contain sufficient information to make a decision on the claim. 38 U.S.C.A. § 5103A(d) (West 2002); McLendon v. Nicholson, 20 Vet. App. 79 (2006). The evidence of a link between current disability and service must be competent. Wells v. Principi, 326 F.3d 1381 (Fed. Cir. 2003).

The veteran's reports of a continuity of symptomatology can satisfy the requirement for evidence that the claimed disability may be related to service. McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006). The threshold for finding a link between current disability and service is low. Locklear v. Nicholson, 20 Vet. App. 410 (2006); McLendon v. Nicholson, at 83. 

In this case, the Board finds that a VA examination for sinusitis is not required. No evidence of a current disability has been presented. The Board has reviewed nearly 1,000 pages of VA treatment records dating from 2011 to 2014 without finding a single reference to sinusitis. The Veteran, in his May 2010 claim and April 2011 substantive appeal, refers only to his service treatment records and has made no reference to a current disability. In the absence of signs or symptoms of a current disability the criteria outlined in McLendon are not met, and an examination is not necessary. 

There is no indication that there is any relevant evidence outstanding in these claims, and the Board will proceed with consideration of the Veteran's appeal.


Service Connection

The Veteran contends that his service treatment records show that he was treated for gastroenteritis and had a history of sinusitis. He also argues that his hearing loss and tinnitus are the result of noise exposure resulting from his duties on the flight line and as an aircraft mechanic. 

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). 

Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996) (table); Hickson v. West, 12 Vet. App. 247, 253 (1999); 38 C.F.R. § 3.303. 

If other organic disease of the nervous system such as sensorineural hearing loss become manifest to a degree of 10 percent within one year of separation from active service, it is presumed to have been incurred during active service, even though there is no evidence of hearing loss during service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. 

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third Shedden/Caluza element is through a demonstration of continuity of symptomatology. However, this method may be used only for the chronic diseases listed in 38 C.F.R. § 3.309. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

Continuity of symptomatology may be established if a claimant can demonstrate (1) that a condition was "noted" during service; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. Savage v. Gober, 10 Vet. App. 488 (1997), overruled on other grounds by Walker v. Shinseki. 

Entitlement to service connection for impaired hearing is subject to the additional requirements of 38 C.F.R. § 3.385, which provides that service connection for impaired hearing shall not be established when hearing status meets pure tone and speech recognition criteria. Hearing status will be considered a disability for the purposes of service connection when the auditory thresholds in any of the frequencies of 500, 1000, 2000, 3000, and 4000 Hertz is 40 decibels or greater; the auditory thresholds for at least three of these frequencies are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385. The United States Court of Appeals for Veterans Claims (Court) has indicated that the threshold for normal hearing is between 0 and 20 decibels and that higher thresholds show some degree of hearing loss. Hensley v. Brown, 5 Vet. App. 155 (1993).

In relevant part, 38 U.S.C.A. 1154(a) (West 2002) requires that VA give "due consideration" to "all pertinent medical and lay evidence" in evaluating a claim for disability benefits. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). 

The Federal Circuit has held that "[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional." Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006) ("[T]he Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence").

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107(b). 


Sinusitis

The Veteran's service treatment records show that he was seen for a stuffy nose in October 1955. He was felt to have a common cold and was much better the next day. In January 1956 he was seen for rhinorrhea and nasal occlusion. The impression was an upper respiratory infection. The Veteran received treatment for a cough and upper respiratory infection in July 1957. A January 1958 note describes a cough and stuffy nose, mostly at night. 

In January 1962 the Veteran was examined in preparation for discharge. The sinuses were normal, but the notes and significant or interval history reported "Sinusitis - occasionally". He answered "yes" to a history of sinusitis on the Report of Medical History he completed at that time. 

However, the Veteran's post service medical records are negative for complaints or treatment pertaining to sinusitis. The Veteran submitted his claim for service connection in May 2010. As previously noted, the Board has reviewed nearly 1,000 pages of VA treatment records dating from 2011 to 2014 without finding a single reference to sinusitis. The Veteran has made no contentions regarding a current disability, and his claim and substantive appeal refer only to the sinusitis noted in service. 

The Board concedes that the Veteran was noted to have a history of sinusitis at discharge. However, this alone is insufficient to establish entitlement to service connection. There must also be evidence of a current disability as well as evidence that it is related to the illness treated in service. 

In this case, there is no evidence whatsoever that the Veteran has a current diagnosis of sinusitis. The existence of a current disability is the cornerstone of a claim for VA disability compensation. 38 U.S.C.A. §§ 1110, 1131 (West 1991); see Degmetich v. Brown, 104 F.3d 1328 (1997) (holding that Secretary's and Court's interpretation of sections 1110 and 1131 of the statute as requiring the existence of a present disability for VA compensation purposes cannot be considered arbitrary and therefore the decision based on that interpretation must be affirmed); see also Caluza v. Brown, 7 Vet. App. 498, 505 (1995); Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); Rabideau v Derwinski, 2 Vet. App. 141, 143 (1992). Therefore, without evidence that the Veteran currently has a diagnosis of sinusitis or has had one during the period on appeal, his claim must be denied. 

Gastroenteritis

The Veteran's service treatment records show that he was hospitalized for gastroenteritis of an undetermined cause in October 1954. A January 1955 note also reports vomiting and epigastric pain, although there was no diagnosis of gastroenteritis on that occasion. 

The January 1962 discharge examination states that the abdomen was normal, and gastroenteritis was not noted. The Veteran answered "no" when asked if he had a history of stomach trouble or frequent indigestion. 

The Veteran's post service medical records are negative for gastroenteritis. At the August 2010 VA examination, the examiner noted that the Veteran did not have a diagnosis of an abdominal condition on his problem list. When asked about gastroenteritis, he denied any history of chronic gastroenteritis symptoms and wondered why this disability was part of his claim. After the physical examination, the examiner stated that there was no diagnosis of gastroenteritis, and no diagnosis of any other gastrointestinal disability was entered. 

As previously discussed, the existence of a current disability is required before service connection can be established. In the absence of a current diagnosis of gastroenteritis, service connection is not warranted. See Degmetich. 

Hearing Loss

The Veteran's February 1954 entrance examination shows that his hearing was 15/15 bilaterally on whispered voice testing. Audiometric testing was not conducted. A diagnosis of hearing loss was not noted on this examination. A February 1956 examination for discharge and re-enlistment continued to show normal hearing on whispered voice testing but did not include audiometric testing. 

A November 1960 Hearing Conversation Data report notes that the Veteran worked in a flight line maintenance squadron. He seldom or never wore ear protection. Audiometric testing revealed thresholds of 0, -5, 0, 50, and 35 decibels at the frequencies of 500, 1000, 2000, 3000, and 4000 Hertz in the right ear. The left ear had thresholds of 0, 0, 0, 25, and 25 decibels at these same frequencies. When converted to ISO units, the auditory thresholds were 15, 5, 10, 60, and 40 for the right ear and 15, 10, 10, 35, and 30 for the left ear. 

The Veteran's January 1962 discharge examination shows normal hearing bilaterally on the whispered voice test. However, audiometric testing showed thresholds of -5, -5, -5, 40, and 25 decibels at the frequencies of 500, 1000, 2000, 3000, and 4000 Hertz in the right ear. The left ear had thresholds of -5, -5, -5, 25, and 30 decibels at these same frequencies. When converted to ISO units, the auditory thresholds were 10, 5, 5, 50, and 35 for the right ear and 10, 5, 5, 35, and 35 for the left ear. 

The Veteran was afforded a VA audiology examination in conjunction with his current claims in August 2010. He reported difficulty in understanding speech. The Veteran noted a history of exposure to gunfire and jet engines in the military. On examination, the Veteran had auditory thresholds of 25, 35, 50, 60, and 70 decibels at the frequencies of 500, 1000, 2000, 3000, and 4000 Hertz in the right ear. The left ear had thresholds of 30, 40, 50, 60, and 70 decibels at these same frequencies. Speech recognition was 96 percent in each ear. 

After a review of the claims folder, an addendum to the August 2010 examination was added to that report. The examiner noted that the Veteran had a normal whisper test when entering service. It was further noted that the Veteran had mild sensorineural hearing loss in each ear at the January 1962 separation examination. The examiner opined that any opinion regarding service connection for hearing loss would be based on speculation due to lack of evidence at the time of induction. The rationale was that the whisper test did not provide frequency or intensity specific information. 

The Board finds that entitlement to service connection for bilateral hearing loss is established by the evidence. 

The August 2010 VA examination confirms that the Veteran has bilateral hearing loss, and that both ears have a current disability as defined by 38 C.F.R. § 3.385. 

The Veteran's service treatment records verify his claim that he was exposed to jet engine noise, and exposure to acoustic trauma in service is conceded. 

Most importantly, the Veteran's February 1954 entrance examination found that the Veteran's hearing was normal when he entered service. Although the August 2010 examiner indicated that the whisper test conducted at that time did not include enough information to verify that the Veteran's hearing was normal, the Board notes that all Veterans will be considered to have been in sound condition when examined, accepted and enrolled for service, except as to defects, infirmities, or disorders noted at entrance into service, or where clear and unmistakable evidence demonstrates that an injury or disease existed prior thereto. Only such conditions as are recorded in examination reports are to be considered noted. 38 C.F.R. § 3.304(b). As hearing loss was not noted on the February 1954 entrance examination, his hearing is presumed to have been normal at that time. 

Therefore, the hearing loss demonstrated during service in November 1960 and January 1962 is considered to have been incurred in service. The hearing loss of the right ear met the requirements of 38 C.F.R. § 3.385 at the time of discharge and continues to meet that standard. Although the left ear fell just short of this standard in service, there is evidence of some degree of hearing loss as defined by the Court in Hensley, and the August 2010 examiner agrees that the left ear had mild sensorineural hearing loss at the January 1962 separation examination. The Board resolves all reasonable doubt in favor of the Veteran and finds that the left ear hearing loss shown at discharge has progressed to the hearing loss that now meets the 38 C.F.R. § 3.385 standard. As the Veteran had hearing loss in service and continues to have hearing loss, service connection is warranted. 

Tinnitus

The service treatment records are negative for reports of tinnitus or tinnitus symptoms. The November 1960 Hearing Conversation Data report states that the Veteran was negative for a history of tinnitus prior to his first noise exposure and following exposure to noise. Tinnitus was not reported at the January 1962 discharge examination. 

The Veteran, in his May 2010 claim, states that he did know what tinnitus was when he was in service. He just knew he had a ringing sound in his head that manifested after being around aircraft on the flight lines. 

At the August 2010 audiology examination, the Veteran's current complaints included bilateral tinnitus. He indicated this made it difficult for him to sleep. The Veteran said this disability began a long time ago. In the addendum to this report, the examiner said that the service treatment records did not show findings related to tinnitus, and that therefore the tinnitus was less likely as not related to noise exposure during military service. 

Resolving all doubt in favor of the Veteran, the Board finds that entitlement to service connection for tinnitus is warranted. The November 1960 Hearing Conversation Data report and the remainder of the service treatment records are negative for tinnitus, and the August 2010 examiner opined that the current tinnitus is not related to service. However, a negative opinion cannot be supported solely on the basis that there is no evidence of treatment in the service treatment records. Furthermore, tinnitus is a subjective disability which cannot be verified by objective testing. It is the type of disability that a layman is competent to describe. See Jandreau. Given the evidence that verifies the Veteran had sensorineural hearing loss in service as well as his claim that he was unaware the ringing in his ears at that time was called tinnitus, the August 2010 diagnosis, and the Veteran's indications that his tinnitus has been present since service, service connection is established. 


ORDER

Entitlement to service connection for sinusitis is denied.

Entitlement to service connection for gastroenteritis is denied.

Entitlement to service connection for bilateral hearing loss is granted. 

Entitlement to service connection for tinnitus is granted. 


REMAND

The Veteran's appeals for entitlement to an increased rating for a right shoulder disability and entitlement to an increased rating for a left ankle disability were initially before the Board in July 2010 when they were remanded for additional VA examinations. These issues were returned to the Board in January 2012 when they were remanded in order to obtain additional opinions pertaining to flare-ups, ankylosis, and employability. This has all been accomplished. 

However, in Correia v. McDonald, 28 Vet. App. 158, 169-170 (2016), the Court recently interpreted 38 C.F.R. § 4.59 (2015) as requiring examinations to include joint testing in both active and passive motion, in weight-bearing and non weight-bearing, and, when possible, of the opposite joint. The most recent VA examination of the Veteran's right shoulder and left ankle was conducted in August 2010. A review of this examination shows that it does not include such range of motion testing. Among other deficiencies, the examination does not record the passive range of motion for either joint or indicate whether or not range of motion was recorded during weight-bearing for the left ankle. Furthermore, these factors were not addressed in the February 2012 addendum opinions. Finally, a thorough review of the VA treatment records shows that these factors have not been addressed on any other occasions. Therefore, the Veteran must be scheduled for new VA examinations of his right shoulder and left ankle. 

As for the Veteran's claim for TDIU, the record shows that he does not currently meet the criteria for scheduler consideration. See 38 C.F.R. § 4.16 (2015). However, this may be impacted by the awards of service connection for hearing loss and tinnitus by this decision as well as the findings of the new examinations of the right shoulder and left ankle. Therefore, further consideration for entitlement to TDIU will be deferred until the development requested in this remand has been completed. 

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Schedule the Veteran for VA medical examinations of the right shoulder and left ankle for the purpose of determining the current nature and severity of his disabilities. Any necessary tests or studies should be conducted and all findings should be reported in detail. This should include range of motion testing in active and passive motion, of the opposite joint, and while weight-bearing and nonweight-bearing. If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain why that is so. The examination report must state whether or not testing was conducting during a flare-up. If not conducted during a flare-up, and if flare-up conditions cannot safely be reproduced, the examiner must estimate the additional functional limitation, in terms of lost degrees of motion, during flares. If this cannot be determined, the examiner must explain why this is so. The examiner must provide a comprehensive rationale with reference to relevant medical findings for all opinions expressed.

2. After completion of the above, readjudicate the Veteran's claims for increased ratings for the right shoulder and left ankle, and his claim for TDIU. If any benefit sought on appeal remains denied, issue a supplemental statement of the case. Then return the case to the Board, if otherwise in order.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
CHERYL L. MASON
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs