﻿Citation Nr: AXXXXXXXX
Decision Date: 01/18/19 Archive Date: 01/17/19

DOCKET NO. 180803-162
DATE: January 18, 2019

ORDER

Entitlement to service connection for hypertension is denied.

REMANDED

Entitlement to service connection for right knee arthritis is remanded.

Entitlement to service connection for a foot disability, to include plantar fibromatosis, is remanded.

Entitlement to service connection for lower spine arthritis is remanded.

Entitlement to service connection for bilateral hearing loss is remanded.

Entitlement to service connection for tinnitus is remanded.

FINDING OF FACT

1. The Veteran’s hypertension was not noted as chronic in service, did not manifest to a compensable degree within one year of separation or demonstrate continuity of symptomatology, and is not otherwise related to active service.

CONCLUSION OF LAW

1. The criteria for service connection for hypertension have not been met. 38 U.S.C. §§ 1101, 1111, 1110, 1153, 5107 (West 2012); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.306, 3.307, 3.309 (2017).

REASONS AND BASES FOR FINDING AND CONCLUSION

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.

The Veteran served on active duty in the United States Army Reserve, with a period of active duty for training (ACDUTRA), from July 1969 to December 1969. The Veteran selected the Supplemental Claim lane when he submitted the RAMP election form. Accordingly, the July 2018 RAMP rating decision considered the evidence of record prior to the issuance of the RAMP rating decision. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

The Board notes that the Veteran originally filed a claim for entitlement to service connection for plantar fasciitis in October 2017. However, the evidence submitted along with the application reflect a diagnosis of plantar fibromatosis. See May 2014 private medical record (diagnosing plantar fibromatosis). It is well settled that a claimant does “not file a claim to receive benefits only for a particular diagnosis, but for the affliction his... condition, whatever that is, causes him.” Clemons v. Shinseki, 23 Vet. App. 1, 5 (2009). Given such, the Board finds it appropriate to recharacterize the Veteran’s claim as a claim for entitlement to service connection for a foot disability, to include plantar fibromatosis. 

Duty to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), codified in pertinent part at 38 U.S.C. §§ 5103, 5103A, and the pertinent implementing regulation, codified at 38 C.F.R. § 3.159, provides that VA will notify and assist a claimant in obtaining evidence necessary to substantiate a claim. 

The VCAA requires VA to notify the claimant and the claimant’s representative of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. As part of the notice, VA is to specifically inform the claimant and the claimant’s representative of which portion, if any, of the evidence is to be provided by the claimant and which part, if any, VA will attempt to obtain on behalf of the claimant. The VCAA also requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate his claims. 38 U.S.C. § 5103A; 38 C.F.R. § 3.159(c), (d). This “duty to assist” contemplates that VA will help a claimant obtain records relevant to his claim, whether the records are in Federal custody, and that VA will provide a medical examination or obtain an opinion when necessary to decide on the claim. 38 C.F.R. § 3.159(c)(4). 

Moreover, for service connection claims, VA is obliged to provide an examination or obtain a medical opinion in a claim when (1) the record contains competent evidence that the claimant has a current disability or signs and symptoms of a current disability, (2) the record indicates that the disability or signs and symptoms of disability may be associated with active service, and (3) the record does not contain sufficient information to decide the claim. 38 U.S.C. § 5103A (d); McLendon v. Nicholson, 20 Vet. App. 79 (2006). The threshold for finding a link between a current disability and service is low. Locklear v. Nicholson, 20 Vet. App. 410 (2006); McLendon, 20 Vet. App. at 83. The Veteran’s reports of a continuity of symptomatology can satisfy the requirement for evidence that the claimed disability may be related to service. McLendon, 20 Vet. App. at 83. However, the duty to provide an examination is not limitless. See Waters v. Shinseki, 601 F. 3d 1274, 1278 (Fed. Cir. 2010). The McLendon threshold elements above must be satisfied before VA is obliged to provide an examination or opinion. Id.; McLendon, supra.

Here, with respect to the Veteran’s claim for entitlement to service connection for hypertension, the Board specifically notes that VA has adequately fulfilled its obligation to assist the Veteran in obtaining the evidence necessary to substantiate the claim. The evidence includes the Veteran’s service treatment records (STRs), post-service treatment records, and lay statements. 

While the Board acknowledges that the Veteran was not afforded a VA examination or medical opinion for this claim, the Board finds the duty to assist nevertheless satisfied because no VA examination or medical opinion is warranted as the McLendon elements have not been satisfied. 

For the claim of entitlement to service connection for hypertension, the evidence does not in any way suggest that the disability is related to any claimed in-service event or injury. The objective medical evidence does not in any way suggest that the Veteran’s hypertension had its onset in service or is otherwise related to his service or any service-connected disability. The Veteran did not even contend in lay statements that his hypertension had its onsets in service or is otherwise related to his service or any service-connected disability. Even if he had, such bare contentions, alone, are insufficient to trigger VA’s duty to assist to provide medical examinations. See Waters v. Shinseki, 601 F.3d 1274, 1278-79 (Fed. Cir. 2010) (explaining that something more than a Veteran’s conclusory, generalized statement is needed to trigger VA’s duty to assist by providing a medical nexus examination). Thus, the “low” threshold for purposes of triggering VA’s duty to provide an examination is not met. 

In sum, a VA examination or medical etiology opinion is not warranted for the Veteran’s claim of entitlement to service connection for hypertension. Accordingly, the Board finds that the duty to assist requirements under 38 U.S.C. § 5103A and 38 C.F.R. § 3.159 (c) have been satisfied for the claim of entitlement to service connection for hypertension.

Service Connection

Service connection will be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303. Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a link between the claimed in-service disease or injury and the present disability. Romanowsky v. Shinseki, 26 Vet. App. 289, 293 (2013). Service connection may also be granted for a disease first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Moreover, the Veteran’s hypertension is a condition that is considered chronic, and therefore, will be presumed to have been incurred in service if it manifested to a compensable degree (meaning to at least 10 percent disabling) within one year after discharge from service. See 38 U.S.C. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309(a). This presumption, however, is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309(a). 

Moreover, since hypertension is a chronic condition according to § 3.309(a), service connection may be established alternatively under § 3.303(b) if it was first noted during his service and he has experienced continuous symptoms associated with it ever since. Walker v. Shinseki, 708 F.3d 1331 (2013). 

More generally, the Federal Circuit has held that “[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional.” Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006) (“[T]he Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence”). 

Although a claimant is competent in certain situations to identify a simple condition such as a fall leading to a broken leg, a lay person is generally not competent to provide evidence as to more complex medical questions, such as the etiology of hypertension. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007); see also Waters v. Shinseki, 601 F.3d 1274 (Fed. Cir. 2010). Once evidence is determined to be competent, the Board must determine whether such evidence is also credible. Layno v. Brown, 6 Vet. App. 465, 469 (distinguishing between competency (“a legal concept determining whether testimony may be heard and considered”) and credibility (“a factual determination going to the probative value of the evidence to be made after the evidence has been admitted”)).

In relevant part, 38 U.S.C. 1154 (a) requires that VA give “due consideration” to “all pertinent medical and lay evidence” in evaluating a claim for disability or death benefits. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the VA shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107(b).

1. Entitlement to service connection for hypertension is denied.

The AOJ found that the Veteran has a current diagnosis of hypertension for VA purposes.

The question in this case is whether a causal relationship or nexus exists between the Veteran’s hypertension and his active duty for training.

First, there is no nexus based on a presumptive basis for the hypertension service connection claim. The Veteran’s service records are silent as to any in-service complaints or treatments related to hypertension. Moreover, there is no indication that the Veteran had hypertension during service or within 12 months after he left service. See, e.g., private treatment records (showing treatment for hypertension as early as 2014); see also Maxson v. Gober, 230 F.3d 1330 (2000) (finding that a prolonged period without medical complaint, and the amount of time that elapsed since service can be a factor for consideration in rebutting the presumption of service connection).

Furthermore, the Veteran has not reported that he has experienced observable symptoms related to hypertension since he left service. Even if he had, he would not be considered competent to determine the medical etiology of his hypertension, as such an etiology determination requires medical expertise, which the record shows he does not have. Thus, chronicity and continuity of hypertension have not been established. See 38 C.F.R. § 3.159 (a)(1) versus (a)(2). See King v. Shinseki, 700 F.3d 1339, 1345 (2012).

In sum, based on the record, the Veteran’s hypertension did not manifest during or within the year after his separation from service, and the evidence of record does not establish that his continuous symptomatology is associated with his hypertension. He is therefore not entitled to service connection on a presumptive basis, including on the basis of continuity of symptomatology, especially where this disorder was not noted in service.

The claim for service connection for hypertension on a direct basis is also denied. There is no evidence in the record establishing the nexus element for service connection for this disability. The Veteran has not submitted any lay statements contending that this disability may be attributable to his military service. Additionally, there is no objective medical evidence of record suggesting that this disability had its onset in, or is otherwise related to his military service. Because the nexus element of direct service connection has not been demonstrated, the claim for entitlement to service connection for hypertension on a direct basis is denied.

In reaching all of the conclusions stated above, the Board considered the applicability of the benefit-of- the- doubt doctrine. However, that doctrine is not applicable in the instant appeal as the preponderance of the evidence is against the claims. 38 U.S.C. § 5170(b); 38 C.F.R. § 3.102 (2016); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990).

REASONS FOR REMAND

1. & 2. & 3. Entitlement to service connection for right knee arthritis, entitlement to service connection for a foot disability, to include plantar fibromatosis, and entitlement to service connection for lower spine arthritis are remanded.

The issues of entitlement to service connection for right knee arthritis, a foot disability, and lower spine arthritis are remanded to correct a duty to assist error that occurred prior to the July 2018 rating decision on appeal. The Agency of Original Jurisdiction (AOJ) did not obtain VA examinations prior to the July 2018 rating decision on appeal. However, based on the evidence associated with the claims file prior to the July 2018 rating decision, the Board finds that VA examination/medical opinions are required to determine whether these disabilities are related to the Veteran’s active duty for training. 

4. & 5. Entitlement to service connection for bilateral hearing loss and Entitlement to service connection for tinnitus is denied are remanded.

The issues of entitlement to bilateral hearing loss and tinnitus are remanded to correct a duty to assist error that occurred prior to the July 2018 rating decision on appeal. The Agency of Original Jurisdiction (AOJ) obtained January 2018 medical opinions prior to the July 2018 rating decision on appeal. However, these medical opinions are inadequate. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). 

First, as his sole rationale for opining that the Veteran’s bilateral hearing loss is not likely to be related to military noise exposure, the VA examiner explained that the Veteran’s audiological exam at discharge showed normal audiometric data. Critically, the examiner did not address the possibility of delayed-onset hearing loss. See Hensley v. Brown, 5 Vet. App. 155, 159 (1993). 

Moreover, with respect to both the bilateral hearing loss and tinnitus opinions, the examiner failed to consider the Veteran’s lay statements. The Veteran reported that he immediately noticed changes in his hearing after he completed some of the exercises on the infiltration course during basic training. These exercises involved loud noises from explosive devices, bullets, and grenades, and the Veteran contends that these noises caused his hearing to change and created a ringing in his ears. See Notice of Disagreement. The Veteran is competent to establish the presence of observable symptomatology and when they began to occur, and there is no evidence these statements are not credible. See Layno v. Brown, 6 Vet. App. 465, 469 (1994). 

Thus, upon remand, new etiology opinions must be obtained that address these concerns.

The matters are REMANDED for the following action:

1. Obtain any relevant outstanding VA treatment records.

2. Schedule the Veteran for a VA examination to determine the nature and etiology of his right knee arthritis. The examiner must be provided access to the electronic claims file and a copy of this remand and he or she must indicate review of these items in the examination report. All necessary tests must be completed.

For any current diagnosis of right knee arthritis, please opine whether it is at least as likely as not (50 percent or greater probability) that the right knee arthritis is related to his active duty for training.

The examiner is specifically instructed to consider the Veteran’s lay statements that he has a damaged right knee and that he believes his right knee was originally injured during basic training, when he was completing an obstacle course that required him to carry a man of equal weight for a hundred yards. See March 2018 Notice of Disagreement. 

3. Schedule the Veteran for a VA examination to determine the nature and etiology of his foot disability, to include plantar fibromatosis. The examiner must be provided access to the electronic claims file and a copy of this remand and he or she must indicate review of these items in the examination report. All necessary tests must be completed.

For any current diagnosis of a foot disability, to include plantar fibromatosis, please opine whether it is at least as likely as not (50 percent or greater probability) that the disability is related to his active duty for training.

The examiner is specifically instructed to consider the Veteran’s lay statements he has a damaged right foot and that he believes his right foot was originally injured during basic training, when he was completing an obstacle course that required him to carry a man of equal weight for a hundred yards. See March 2018 Notice of Disagreement. 

4. Schedule the Veteran for a VA examination to determine the nature and etiology of his lower spine arthritis. The examiner must be provided access to the electronic claims file and a copy of this remand and he or she must indicate review of these items in the examination report. All necessary tests must be completed.

For any current diagnosis of lower spine arthritis, please opine whether it is at least as likely as not (50 percent or greater probability) that the lower spine arthritis is related to his active duty for training.

The examiner is specifically instructed to consider the Veteran’s lay statements that he has a damaged lower back and that he believes his lower back was originally injured during basic training, when he was completing an obstacle course that required him to carry a man of equal weight for a hundred yards. See March 2018 Notice of Disagreement. 

5. Schedule the Veteran for another VA examination, with a different examiner, to determine the nature, extent, and etiology of any currently manifested hearing loss. 

The Veteran’s claims file must be provided to the examiner for review. 

The examiner is instructed to obtain a full account from the Veteran as to the date of onset of the hearing loss in the right and left ears.

All appropriate audiological testing should be performed. 

The examiner is then specifically instructed to provide the following information:

(a) Is at least as likely as not (i.e., a 50 percent or greater probability) that the Veteran’s hearing loss began during active duty for training, yes or no? 

(b) Is at least as likely as not (i.e., a 50 percent or greater probability) that the Veteran’s hearing loss is caused by or otherwise related to his time in active duty for training, specifically to include military noise exposure in active duty for training, yes or no? (Here, the Veteran contends that he was exposed to military noise from heavy weapon artillery during basic training. See Notice of Disagreement).

The term “at least as likely as not” does not mean “within the realm of medical possibility.” Rather, it means that the weight of medical evidence both for and against a conclusion is so evenly divided that it is as medically sound to find in favor of the conclusion (e.g., diagnosis, etiology) as it is to find against the conclusion.

Under Hensley v. Brown, the examiner must still assess whether the Veteran’s current bilateral hearing loss is etiologically related to service, despite the Veteran’s hearing being within normal limits under VA law at separation from service. Furthermore, in doing so, the examiner must also specifically address any threshold shifts in hearing that the Veteran may have experienced while in service.

After answering yes or no to, a complete rationale must be provided for the opinion expressed. A discussion of the facts and medical principles involved (to include acoustic trauma and military noise exposure) including the Veteran’s lay assertions (including that the Veteran’s was exposed to military noise exposure that resulted in acoustic trauma while in service) should be considered in giving this opinion, with page references to the evidence used in the decision.

6. Schedule the Veteran for a new VA examination to determine the nature and etiology of his tinnitus. The examiner must be provided access to the electronic claims file and a copy of this remand and he or she must indicate review of these items in the examination report. All necessary tests must be completed.

For any current diagnosis of tinnitus, please opine whether it is at least as likely as not (50 percent or greater probability) that the tinnitus is related to his active duty for training.

The examiner is specifically instructed to consider the Veteran’s lay statements that he began noticing ringing in his ears during his active duty for training. See Notice of Disagreement. 

7. If the requested opinions cannot be rendered without resorting to speculation, the examiners must state whether the need to speculate is caused by a deficiency in the state of general medical knowledge, i.e., no one could respond given medical science and the known facts, or by a deficiency in the record or the examiner, i.e., additional facts are required, or the examiner does not have the needed knowledge or training. Jones v. Shinseki, 23 Vet. App. 382, 389 (2010). (The AOJ should ensure that any additional evidentiary development suggested by the examiner be undertaken so that a definite opinion can be obtained.)

(Continued on the next page)

 

8. Any opinion expressed must “contain not only clear conclusions with supporting data, but also a reasoned medical explanation connecting the two.” See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 301 (2008).

 

YVETTE R. WHITE

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD C. J. Cho, Associate Counsel